MONTANA CITIZENS FREIGHT RATE ASS'N.,
Respondent, v. BOARD OF RAILROAD COM'RS.
of MONTANA, et al., Appellants.

No. 9327.

Submitted March 10, 1954. Decided May 5, 1954.
As Amended on Denial of Rehearing June 8, 1954.
Further Petition for Rehearing Denied June 30, 1954.

271 Pac. (2d) 1024.

Mr. Arnold H. Olsen, Atty. Gen., Mr. H. Moody Brickett, Asst. Atty. Gen., Mr. James B. Patten and Mr. John H. Risken, Sp. Asst. Attys. Gen., and Secretary Counsel for Board of Railroad Commissioners, Mr. Edwin S. Booth, Sp. Asst. Atty. Gen.,

Mr. S. B. Chase, Jr., Great Falls, Mr. Conrad Olson, Mr. John C. Smith and Mr. Warren H. Ploeger, St. Paul, Minn., for appellants.

Mr. Truman G. Bradford, Great Falls, Mr. Leo C. Graybill, Jr., Great Falls, for respondent.

Mr. Booth, Mr. Ploeger, Mr. Chase and Mr. Graybill argued orally.

MR. JUSTICE ANGSTMAN:

This appeal is by defendants and intervenors from a judgment holding an order of defendant board increasing intrastate freight rates to be invalid and void.

The interstate commerce commission in Ex Parte 175, reported in 284 I. C. C. R. 589, increased the rates and charges of the rail carriers operating in Montana by nine percent by granting a fifteen percent increase in lieu of a six percent increase previously granted subject to certain exceptions. The findings of the commission, among others, were that the ''rates and charges increased as herein authorized are not considered as prescribed within the meaning of the decision in Arizona Grocery Co. v. Atchison T. & S. F. Ry. Co., 284 U. S. 370, 52 S. Ct. 183, 76 L. Ed. 348'' and ''The authority to maintain the increases provided in these findings shall expire February 28, 1954, unless sooner modified or terminated. * * * The record will be held open for the purpose of re-examination of the increases authorized herein prior to the expiration date.''

The Montana board of railroad commissioners after notice and hearing on an application made by the railroads granted a corresponding fifteen percent increase in the intrastate freight rates and charges in lieu of a previously granted six percent increase. The board's order was dated December 29, 1952, and became effective January 28, 1953, and was made to expire February 28, 1954. It expressly exempted livestock shipments from the increased rates and charges.

Plaintiff brought this action under R. C. M. 1947, sec. 72-125, in the district court of Cascade County against the board to have the intrastate rate as thus increased declared unjust, un-

lawful and unreasonable and for an injunction preventing the rates from being made effective. The complaint alleged that the evidence before the board did not show what contribution to the revenue of the railroads was necessary from intrastate traffic to sustain the railroad system; that the evidence before the board did not show that the revenues from Montana intrastate traffic did not produce a fair return on the portion of their investment used in Montana intrastate traffic; that the evidence did not show that there was any necessity for increased Montana intrastate rates; that the evidence did not show that the existing relationships between interstate and intrastate rates were reasonable and should be continued; that the evidence is not sufficient to show that the interstate increases can be borne by intrastate traffic without harm to the state's economy; that there was no evidence to show that the failure to apply the interstate increases to intrastate traffic would weaken the financial stability or operating efficiency of the railroads and that the findings of the board are contrary to the evidence.

The answer put in issue all the material allegations of the complaint. The district court issued an order to show cause why an injunction pendente lite should not issue and entered a restraining order pending the hearing on the order to show cause. The board moved to quash the order to show cause and the restraining order. The railroads petitioned and were allowed to intervene. Their complaint in intervention asserted the reasonableness of the rates and that they were justified by the evidence. They likewise asked the court to dissolve the restraining order and vacate the order to show cause.

Plaintiff by answer and cross complaint put in issue the affirmative allegations of the complaint in intervention and requested and was granted a restraining order against the railroads.

When the cause came on for trial the railroads offered in open court to make restitution of the money derived from the increased rates and charges in the event on final hearing and appeal the increases were determined to be unreasonable and

unjust. The court, thereupon, pursuant to the offer on behalf of the railroads, entered an order directing the restraining orders and motions to quash to be held in abeyance until final determination of the case.

The evidence received before the board was introduced by stipulation.

The court found that the intrastate increase "was based upon evidence of a similar increase granted by the interstate commerce commission in interstate rates, without any evidence of Montana conditions or any proper showing of necessity for the Montana intrastate rate increase." Its findings and conclusions were substantially in the language of allegations made in the complaint. The court found that the conditions under which traffic moves in intrastate commerce in Montana are not comparable to the conditions under which traffic moves in interstate commerce generally by reason of geography, distance, population, sizes of cities, freight terminal facilities and the nature of Montana's economy.

The court found the rates established by the order of the Montana board unjust, discriminatory and unreasonable and made without sufficient evidence and that the order was invalid. The decree directed restitution of all sums collected under the order pursuant to the offer and stipulation made at the trial.

This appeal is from that judgment and decree.

Much of the brief of the board is in support of the contention that the district court, because of R. C. M. 1947, sec. 72-133, has no authority to issue a temporary injunction to restrain the operation of the board's order until final judgment.

We agree with the railroads that this question was eliminated from consideration by the order of the trial court directing that the restraining orders and motions be held in abeyance until final decision pursuant to the offer of the railroads to make restitution in the event the increases are finally determined to be unreasonable and unjust.

The determinative question before us is whether the court was right in holding that the evidence before the board was not

132

sufficient to sustain its order granting the increase in intrastate rates and charges.

It is of course fundamental that neither the district court ▮ nor this court may substitute its judgment or opinion for that of the board. Its findings are deemed prima facie just, reasonable and proper. R. C. M. 1947, sec. 72-133. And the courts "should ascribe to them the strength due to the judgments of a tribunal appointed by law and informed by experience." Chicago, M., St. P. & P. R. Co. v. Board of R. R. Com'rs, Mont., 255 Pac. (2d) 346, 350.

But if there be no evidence to support the findings of the board the courts have the right, and it is their duty when their jurisdiction is properly invoked, to intercede. 42 Am. Jur., Public Administrative Law, sec. 214, p. 644.

The consequences of an intrastate rate increase by the state ▮ board are quite different from the standpoint of a shipper from an interstate rate increase by the interstate commerce commission. The reason for this difference is that the interstate commerce commission has the power and authority to declare a rate unreasonable or discriminatory retroactively and to compel reparation to a shipper who has paid freight charges in excess of a reasonable rate. The state board has no such authority. Montana Horse Products Co. v. Great Northern Ry. Co., 91 Mont. 194, 7 Pac. (2d) 919.

If the interstate commerce commission makes a mistake and authorizes a rate increase that is later determined to be unreasonable the shipper is not without remedy. As to an increase of intrastate rates by the state board without proper evidence the mistake cannot be rectified so far as one who has already paid the unreasonable rate is concerned. So while the interstate commerce commission may increase interstate rates for general revenue purposes without establishing a fully developed rate case as to each item in each freight rate, King v. United States, 344 U. S. 254, 73 S. Ct. 259, 97 L. Ed. 301; New England Divisions Case, [Akron, C. & Y. R. Co. v. U. S.] 261 U. S. 184, 43 S. Ct. 270, 67 L. Ed. 605; United States v. State of Louisiana,

290 U. S. 70, 54 S. Ct. 28, 78 L. Ed. 181, that rule does not apply to the state board in fixing intrastate rates.

A careful study of the record, including the exhibits placed before the board, convinces us that the board leaned too heavily, if not enitrely, upon the action taken by the interstate commerce commission as to interstate rates and did not require independent proof on matters essential to warrant an increase in intrastate rates and charges. The state board took for granted, or indulged the assumption, that the intrastate rate was properly related to the interstate rate prior to the change made in the latter, and that to maintain this relationship the intrastate rate had to be increased exactly the same as the interstate rate. In any event, with the exception of livestock, that is what the board did. The order of the board contains this significant statement: "We repeat our statement in order No. 2310, this docket, where we said, 'We do not want our action here to be considered as any waiver of our right to require the applicants in a proper case to justify their positions by satisfactory and substantial evidence, including intrastate costs of service and value of plant used for intrastate service.' "

The proper time for the carriers to justify their request for increased rates by satisfactory and substantial evidence was at the hearing on their application which was then being considered. The board has no authority to grant an automatic raise in intrastate rates simply because the interstate commerce commission had granted a raise in interstate rates. In other words, the mere disparity between the interstate rates and the intrastate rates does not compel the state board to grant an increase so as to remove the disparity. State of North Carolina v. United States, 325 U. S. 507, 65 S. Ct. 1260, 89 L. Ed. 1760.

Since 1946 there have been several freight rate increases both for interstate and intrastate traffic. It would serve no useful purpose to specifically recount the several proceedings had for this purpose. The basic increases since January 1, 1946, add up to 78.8 percent.

The railroads introduced evidence of expert witnesses that

in their opinion the increase requested will not be in excess of maximum reasonable rates, and that it would not cause traffic to be diverted to other forms of transportation and that the increase is necessary to enable the railroads to render service at the lowest cost consistent with the furnishing of such service. These statements are in the nature of conclusions and are of little weight unless supported by evidence showing factual data.

As was said in Baltimore & Ohio R. R. v. United States, 298 U. S. 349, 378, 56 S. Ct. 797, 812, 80 L. Ed. 1209; ''And they [appellees] rightly say that opinions of experts unsupported by adequate actual tests may not safely be substituted for concrete data.'' To the same effect is The Minnesota Rate Cases [Simpson v. Shepard] 230 U. S. 352, 33 S. Ct. 729, 57 L. Ed. 1511.

No attempt will be made to give a resume of the evidence. We have considered all of the evidence including the exhibits and agree with the trial judge that there is no evidence showing the necessity for an increase in intrastate freight rates, or if so, how much of an increase is necessary. In fact the board conceded as much when it made the reservation in its order above referred to. There was no breakdown of operating revenues, gross or net, or operating expenses, gross or net, allocated to Montana. There was no showing made as to what proportion of the cost of operating the railroads should be borne by Montana intrastate traffic or whether Montana intrastate traffic is now bearing its fair share of the operating costs or whether the revenue from Montana intrastate traffic should be increased in order to produce a fair return to the carriers upon the fair value of their property devoted to intrastate traffic, or if so, how much. From all that appears in the record the carriers are already receiving sufficient net income to yield to them a fair return on the fair value of their property.

In the case of King v. United States, 344 U. S. 254, 73 S. Ct. 259, 97 L. Ed. 301, the court pointed out that where the conditions under which interstate and intrastate traffic move are substantially the same with respect to all factors bearing upon the reasonableness of the rates, then the reasonableness of the intra-

state rate need not be dealt with specifically and there need not be a separation of intrastate and interstate costs and revenues.

The difference between that case and this one is fundamental. In the King Case the court was considering the validity of an order of the interstate commerce commission and not an order of the state commission. The order of the interstate commerce commission in the King Case was made under section 13 of the Interstate Commerce Act and the only question presented to the court, or that could be presented to it, was whether the interstate commerce commission was right in holding that the intrastate rate caused undue, unreasonable or unjust discrimination against interstate commerce.

In answering that question it was properly held that the reasonableness of the intrastate rate need not be dealt with specifically. That conclusion on that point was correct because the reasonableness of the rate was not an issue in the case. The sole issue was one of unreasonable discrimination. But before the state board has the authority to grant an increase in rates, it must be shown that the existing rates are inadequate to yield a fair return, and the burden of so showing is upon those asking for an increase in the rates. That presents an entirely different issue from that of unreasonable discrimination presented to the interstate commerce commission under section 13 of the Interstate Commerce Act.

As above pointed out, an intrastate shipper may not obtain reparation after paying an unreasonable intrastate rate, and hence before those rates may be increased by the state board, a proper showing must be made. In this connection it is noteworthy that the interstate commerce commission in the order involved in the King Case realized that it was indulging in some guesswork and reserved the right of interested parties to seek a modification of its order. This appears in the opinion in the King Case wherein it is said [344 U. S. 254, 73 S. Ct. 269]: ''The Commission in the instant case has provided that these 'findings are without prejudice to the right of the authorities of the State of Florida, or any other interested party, to apply

136

for a modification thereof as to any specific intrastate rates * * * on the ground that they are not related to the interstate rates * * * on like traffic in such a way as to contravene the provisions of the Interstate Commerce Act.' Id. [278 I. C. C.], at 74. Certain of the rates in the original order already have been modified or removed from that order. [D. C.] 101 F. Supp. [941] at page 946.'' King v. United States, supra.

That had the effect of shifting the burden of proof to the shippers to prove that a certain specific intrastate rate did not produce unreasonable discrimination against intrastate commerce, contrary to the Intrastate Commerce Act which contemplates that the burden of proof rests with those asserting undue discrimination, to prove it. 73 C. J. S., Public Administrative Bodies & Procedure, sec. 124, p. 444.

The case of Texas Industrial Traffic League v. Railroad Commission of Texas, Tex. Civ. App., 255 S. W. (2d) 903, 907, is relied on by appellants as sustaining the view that the railroad commission was not required to hold a full-fledged rate case segregating intrastate costs and revenues before granting an increase in rates. In that case the court pointed out that ''periodic surveys and investigations are made'' in the rate structure of the railroads by the state commission and that it is entitled to ''rely upon its official knowledge of all pertinent data revealed to it in former findings which are in the Commissioners' continuing information file.''

We are not advised that periodic surveys or investigations have ever been made by the Montana commission relative to the railroad rate structure in Montana or that its files or former findings contain data pertaining to railroad rate structures which may be relied on by it.

The Texas Case relies upon a statement from 73 C. J. S., Public Administrative Bodies & Procedure, sec. 123, p. 443, to the effect that an administrative body may act not only on the evidence presented before it, but on its own expert knowledge and information. But this statement of the rule is followed by

an important statement reading, "provided it makes known the nature of such knowledge in its decision."

The decision before us does not indicate that the board relied on any such knowledge. On the contrary, the decision of the board negatives the existence of such knowledge by the non-waiver clause appearing in its order above quoted.

The railroads contend that they are unable to apportion the costs, expenses and revenues. Difficulties in obtaining an exact breakdown do not absolve them from the responsibility of coming forward with the best obtainable figures. Sworn reports are filed with the Montana board which contain such breakdowns. The carriers claim that they are arbitrary figures and are not accurate.

Rate making is not an exact science. There is some speculation in all cases as to whether a given rate will produce a fair rate of return and no more. Even the interstate commerce commission in this very case had doubts about the accuracy of the fifteen percent increased rates and was unwilling to prescribe them as the rates within the meaning of the Arizona Grocery Company Case. Likewise the commission was unwilling to project the rates into the future beyond February 28, 1954. It is significant that the interstate commerce commission's order does not state that any assumption is made by it that similar increases will be ordered by the state boards as it did in the order involved in the King Case, supra. Additionally, the members of the commission were not in agreement upon all phases of the report. Commissioner Aitchison stated his views as follows: "I concur generally in the foregoing report, but cannot agree that the revenue needs of the petitioning railroads in the three rate territories are so equal as to warrant a uniform, Nation-wide increase in rates. The revenue needs of the railroads in the eastern district are greater than in the southern or western districts, as the report makes entirely clear. This difference in financial condition should be recognized by the Commission. Furthermore: the uniform increase authorized, an additional 6 percent in the eastern district, and 9 percent elsewhere, is

138

unjust, as it unnecessarily penalizes the traffic in those territories in which the railroads are relatively the more prosperous. I would make the increase in the eastern district 15 percent, as authorized by the report, but not over 12 or 13 percent elsewhere. Corresponding modifications should be made in the maximums prescribed. Commissioner Mahaffie authorizes me to state that he joins in this expression.'' 284 I. C. C. R. 666.

But the rule is as stated by Beale and Wyman in their treatise on Railroad Rate Regulation, sec. 466, p. 455: ''The fact that an exact mathematical computation of the cost is impossible is immaterial; the cost must be found, as best it may be, before the reasonableness of the local rate can be determined. 'There are many things that have to be determined by court and jury in respect to which mathematical accuracy is not possible.' Chicago, M. & St. P. R. Co. v. Tompkins, 176 U. S. 167, 20 S Ct. 336, 340, 44 L. Ed. 417, 418.''

In the Tompkins Case the court said: ''We think, therefore, there was error in the failure to find the cost of doing the local business, and that only by a comparison between the gross receipts and the cost of doing the business, ascertaining thus the net earnings, can the true effect of the reduction of rates be determined.''

In The Minnesota Rate Cases, 230 U. S. 352, 466, 33 S. Ct. 729, 766, 57 L. Ed. 1511, the court said:

''While accounts have not been kept so as to show the relative cost of interstate and intrastate business, giving particulars of the traffic handled on through and local trains, and presenting data from which such extra cost as there may be, of intrastate business, may be suitably determined, it would appear to have been not impracticable to have had such accounts kept or statistics prepared, at least during test periods, properly selected. It may be said that this would have been a very difficult matter, but the company, having assailed the constitutionality of the state acts and orders, was bound to establish its case, and it was not entitled to rest on expressions of judgment when it had it

in its power to present accurate data which would permit the court to draw the right conclusion. * * *

"As neither the share of the expenses properly attributable to the intrastate business, nor the value of the property employed in it, was satisfactorily shown, and hence it did not appear upon the facts proved that a fair return had been denied to the company, we are of the opinion that the complainant failed to sustain his bill."

As above noted, if the interstate commerce commission increase proves to be an unreasonable rate and produces more than a fair return, an interstate shipper may obtain reparation, but if the intrastate rate be increased to the same extent and it is later shown to be unreasonable or to produce more than a fair return, the intrastate shipper who has paid the excessive charge or rate is remediless.

In the briefs much reliance is placed upon the cases of State of North Carolina v. United States, 325 U. S. 507, 65 S. Ct. 1260, 89 L. Ed. 1760, and King v. United Sattes, 344 U. S. 254, 73 S. Ct. 259, 97 L. Ed. 301. Both of these cases were brought under section 13 of the Transportation Act, 49 U. S. C. A.. That section authorizes the interstate commerce commission to set aside intrastate rates when they are found to cause undue, or unreasonable advantage, preference, or prejudice as between persons or localities in intrastate commerce on the one hand, or undue, unreasonable, or unjust discrimination against interstate or foreign commerce. 49 U. S. C. A. sec. 13, par. (4).

Under the statute it is clear that advantage, preference or discrimination standing alone is not sufficient justification for interference with intrastate rates. It is only undue or unreasonable advantage, preference or prejudice, or undue, unreasonable or unjust discrimination that justifies intervention by the interstate commerce commission. No such showing appears here.

We deem it appropriate to make special reference to the showing made by the Montana, Wyoming & Southern Railroad Company, not a party to this action. The record shows that it is

operating at a financial loss. Its principal tonnage over the years has consisted of coal. The coal industry is not thriving. About ninety percent of the company's revenues are from intrastate traffic. Only ten percent come from interstate traffic. The record shows that before this hearing took place the board advised this company that under the power conferred by R. C. M. 1947, sec. 72-116, it would consider a separate application by this carrier for such rates as it saw fit to apply for, but no such application was made.

The district court was right in holding the order of the state board invalid. The judgment and decree appealed from is affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES BOTTOMLY, FREEBOURN, and ANDERSON, concur.