In 1 Anderson, Declaratory Judgments, 2d ed., p. 783, it is stated:

"The statute of limitations in a declaratory action does not begin to run against a right to maintain the same, until an actual controversy has accrued or occurred, and undisclosed conflicting claims between persons bearing jurial relations do not constitute a controversy which would set in operation the statute of limitations against the action for declaratory relief. Until an actual controversy has arisen between the parties no cause for declaratory relief has accrued and the statute of limitations is not operative. So it would seem to follow, that until there is a dispute as to the making or interpretation of a contract, no right to maintain a declaratory action has accrued."

In the case at bar it does not appear when a controversy arose or when the defendants claimed any mineral interest as involved herein. For aught we know the defendants claimed no mineral interest in this case until they were served with process. Hence, it is clear under the foregoing authorities that the contention herein that the action is barred by the statute of limitations must be overruled. See further on that subject 44 Am.Jur. Quieting Title § 63, p. 47.

From what we have said it is apparent that the judgment must be and is affirmed.

Affirmed.

Application of CHICAGO & NORTH WESTERN RAILWAY COMPANY for an order authorizing it to discontinue all express service between Casper, Wyoming, and the Wyoming-Nebraska State Line, and for authority to terminate its contract with Prairie Motorways for the performance of motor transportation service in connection therewith.

CHICAGO & NORTH WESTERN RAILWAY COMPANY, a Corporation, Appellant.

v.

PUBLIC SERVICE COMMISSION OF WYOMING; Lions Club of Lusk, Wyoming; Allen Fosher of Manville, Wyoming; and Casper Chamber of Commerce, Appellees.

No. 2850.

Supreme Court of Wyoming.
Jan. 20, 1959.

Loomis, Lazear & Wilson, Cheyenne, Neely & Otis, Omaha, Neb., and Edgar Vanneman, Jr., Chicago, Ill., for appellant.

Thomas O. Miller, Atty. Gen., Ralph M. Kirsch, Sp. Asst. Atty. Gen., for appellees.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice PARKER delivered the opinion of the court.

The Chicago & North Western Railway Company in 1956 filed an application with the Public Service Commission of Wyoming, praying for an order authorizing it to discontinue service "between the Wyoming-Nebraska State Line and Douglas and Casper."[1] Applicant also sought to terminate its outstanding contract with the Prairie Motorways for the carriage of the express on the route. The commission denied the application, rejecting rehearing, and the District Court of Laramie County upon appeal entered judgment affirming the commission's ruling, from which judgment the matter has been brought to this court.

Appellant in seeking reversal relies upon two alleged errors of the district court: (1) failing to find that the commission's order was not in conformity with law and not supported by substantial evidence; (2) upholding the commission's order denying the application to discontinue the express service and thereby depriving appellant of property without due process of law in violation of the Fourteenth Amendment of the Federal Constitution.

The current efforts of the railway company to secure permission for discontinuance of certain service is in effect a sequel to a request made by it to the commission in 1950 at which time the railway company asked and was granted permission to discontinue operation of its two passenger trains over the mentioned route. At that time the railway company agreed to provide motor transportation service for the carriage of express and drovers along

---

1. Actually the service had previously been reduced by changing the terminal points to Douglas and the Wyoming-Nebraska state line.

the line from which the passenger trains were permitted to be removed, and the commission's order provided therefor. The railway contracted with Prairie Motorways to supply the express service, which at first covered the entire route on a five-day-week basis but was subsequently reduced to a four-day-week, with the terminal points being changed to Douglas and the Wyoming-Nebraska state line.

We first examine the record to ascertain whether or not there was any substantial evidence to support the commission's findings and order. In so doing we are cognizant of the rule that the burden of proof rested upon the appellant to sustain the allegations of its application. This is in accordance with Part I, Rule 10, subdivision 5, Rules of the Public Service Commission,[2] effective July 1, 1949, providing, inter alia:

"Witnesses will be examined orally and under oath before the Commission or a Commissioner unless the facts are stipulated or the Commission or Commissioner otherwise orders. The complainant must establish the facts upon which he bases his complaint, unless the defendant admits the same. * * *"

It is well settled that in proceedings before commissions, as in courts, the burden of proof rests upon complainants. Utah Const. Co. v. Berg, 68 Ariz. 285, 205 P.2d 367; Montana Citizens Freight Rate Ass'n v. Board of Railroad Com'rs of Montana, 128 Mont. 127, 271 P.2d 1024; Commuters' Committee v. Pennsylvania Public Utility Commission, 170 Pa.Super. 596, 88 A.2d 420; Neumann v. Industrial Commission, 257 Wis. 120, 42 N.W.2d 445; City of Norfolk v. Chesapeake & O. Ry. Co., 192 Va. 828, 67 S.E.2d 99; Pacific Power & Light Co. v. Federal Power Commission, 9 Cir., 111 F.2d 1014; 24 A.B.A.J. 630, 634; 73 C.J.S. Public Administrative Bodies and Procedure § 124; and 42 Am. Jur. Public Administrative Law § 131. See also Rayburne v. Queen, Wyo., 326 P.2d 1108.

The record as we view it disclosed several significant matters. The railway's attorney in his opening remarks said:

"* * * we seek to eliminate that burden of express business which we have been required to substitute service for upon the elimination of passenger train 613 and 614, which occurred by order of the two Commissions in 1950."

He did not allude to public convenience or necessity.

The first and only witness of the applicant was G. M. Bruere, Assistant to the Executive Vice-President of the railway, who stated that his duties included study and analysis of factors contributing to over-all deficit of passenger train operations and other services including express; said he was responsible for the preparation of reports on railway express, operation, and revenue; cited amounts received by the company for such handling; identified applicant's Exhibit 1 which purported to summarize the revenue and expense of the express service during the years 1950-1956; and indicated the loss for the various years under consideration to be: 1951, $23,544; 1952, $20,686; 1953, $19,585; 1954, $16,604; 1955, $15,866; first eight months of 1956, $10,035, and an anticipated loss for the year of $16,000. Details and satisfactory explanations of these figures were lacking. The witness discussed the deficit in the over-all operation of the company but indicated he had no breakdown of figures which would show the relative percentage of intrastate and interstate shipments with points of origin and destination of express and said that the figures presented referred to operation in both Wyoming and Nebraska. When asked about the figures in Wyoming, he stated, "I would personally be inclined to *believe* that the operation, either within the State of Wyoming or the State of Ne-

2. Section 64-309, W.C.S.1945, authorizes the promulgation of rules by the commission.

braska, would be heavily on the deficit side." (Empahsis supplied.) He said:

"We are not attempting to go into the express business because we are not in the express business. The handling of express traffic is the responsibility of the Railway Express Agency. * * * We are not arguing today as to the necessity for this service. As far as our railway company is concerned, the payments we received from the Railway Express Agency for the handling of their express traffic in this particular instance are shown by the exhibit that I have introduced to fall far short of the overall expenses which we must bear, and it is for that reason that we believe that the further handling of express, if it is to be handled in this territory, should not be the responsibility of the railway company but the responsibility of the Railway Express Agency."

The Railway Express Agency, Inc., appeared as an intervener, and its attorney, Elmer F. Slovacek, was sworn and testified as to the general nature of the agency's operation, the method by which its expenses were borne, the deficits charged, and the reports made to each of the railway companies whom it served.

Arthur L. Decker, Division Supervisor of the Railway Express Agency, identified a number of exhibits showing railway express business at different points on the line, proportion of cost to income, and the nature of the business. He indicated that some Nebraska business was included in the reports and that the gross figures showed no allocation as to place of shipment and destination. He also explained the relationship of the Railway Express Agency to the number of railroads which the agency served and the procedure in the event of a loss in the operation.

The other witnesses who appeared at the hearing were users or representatives of users of the express service. They outlined and discussed their needs for the handling of express in the area in which they lived and its relationship to their respective businesses.

Our examination of the record discloses that the railway company in its opening statement did not presume to present any evidence showing any lack of public convenience or necessity for railway express service along its line in Wyoming. Its one witness, asuming to speak for his company, said he was not arguing the point—in other words, he conceded the necessity. The exhibits which purported to show certain items of income and expense relating to the express service, although subject to objection when offered in evidence because of insufficient identification and explanation, were permitted to go in and accordingly did constitute some proof of the financial loss claimed to be suffered by the applicant. Nevertheless, they are unconvincing to us as a reviewing court because so many details are lacking and because the witness who identified them tended to generalize and to discuss his thoughts and estimations rather than specific facts.

■ Considering the burden of proof which falls upon an applicant and the discretion which should be accorded to the commission in its hearings, we would be reluctant to override its findings wherein it was stated:

"We have emphasized the uncercertainty of the actual loss sustained by Railway Company in providing the motor express service performed by Motorways in Wyoming and the unreliability of the evidence as to whether the service pays its own way. The fact that Railway Company may have sustained a substantial loss in providing the service does not, in our opinion, entitle it to discontinue the same. * * *"

This is especially true in the light of the fact that *no* effort was made to show either (1) that there was a lack of public convenience and necessity for the express service or (2) that the alleged loss to the railway company by reason of the express service was greater or more serious in 1956

than it was in 1950 at the time the company voluntarily offered to provide such service.

From what we have said, it becomes unnecessary to discuss appellant's contention that it was deprived of property without due process of law. There has been no deprivation of property. The commission's order of 1950 stated that applicant would provide a substituted transportation service for the carriage of express and drovers. Such provision was based upon a voluntary offer of applicant. No appeal was taken from the order which remains fully effective until such time as it is legally changed by order of the commission based upon proper evidence.[3] No such evidence has been presented.

The judgment of the district court should be and the same is hereby affirmed.

Affirmed.

---

3. French v. Rishell, Cal.App., 248 P.2d 46, affirmed 40 Cal.2d 477, 254 P.2d 26. See also the numerous cases listed in 1 Sixth Decennial Digest, Administrative Law, 3 Freeman on Judgments, 5th Ed., p. 2617; 73 C.J.S. Public Administrative Bodies and Procedure § 144, and 42 Am.Jur., Public Administrative Law, § 155, p. 508.