370 P.2d 665

The ARIZONA COMMISSION OF AGRI-
CULTURE AND HORTICULTURE, Jess
Watt, Chairman, Jewell Turner, Member,
Homer Kryger, Member of said Commis-
sion, and W. T. Mendenhall, Arizona State
Entomologist, and Arizona Cotton Growers
Association, an Arizona non-profit corpora-
tion, Petitioners,

v.

Ross F. JONES, Judge of the Superior Court,
Maricopa County, State of Arizona, S. W.
Hansen, E. B. West and Desmond G. Wood,
for and on behalf of themselves, individual-
ly, and for and on behalf of others in a
class similarly situated, real parties in in-
terest, Respondents.

No. 7571.

Supreme Court of Arizona,

En Banc.

April 11, 1962.

Robert W. Pickrell, The Atty. Gen., Joseph S. Jenckes, V Asst. Atty. Gen., for petitioner, The Arizona Commission of Agriculture and Horticulture.

Snell & Wilmer, Phoenix, for petitioner, Arizona Cotton Growers Association.

Tenney & Pearson, Phoenix, for respondents.

STRUCKMEYER, Justice.

In 1958 the Arizona Commission of Agriculture and Horticulture determined that by reason of the pink bollworm of cotton a menace existed to the agricultural industry of this state. Thereafter, by Revised Quarantine Regulation No. 7, it provided that no volunteer or stub cotton would be allowed to grow in the State of Arizona and by Regulation No. 4 of Revised Quarantine Regulation No. 7 required that all crop remnant after cotton harvest be shredded or chopped and plowed to a depth of 6 inches with the final date for plowup to be fixed annually. On October 25th, 1961, the commission met for the purpose of conducting a hearing to determine the plowup date for the 1961 cotton crop.

Respondents appeared at the hearing with their attorney and filed with the commission an uncaptioned typewritten statement opposing the application of Quarantine Regulation No. 7 to the area farmed by respondents. It is to be emphasized that the hearing of October 25th, 1961, was for the limited purpose of determining the plowup date for crop remnants of cotton. Except for the interposition of the matters raised in respondents' statement, the only matter considered was whether the final plowup date should be February 28th, 1962 as proposed by the commission or an earlier date suggested by some of those present at the hearing. At the time respondents filed their statement, the chairman of the commission remarked that they were entitled to a hearing and said, " * * * we are very glad to look over this, which we will do before our regulations are made. * * * " After a brief discussion of the contents of the statement, the commission proceeded with the business for which the hearing was called, that is, to determine the final plowup date.

No hearing was then or ever called, noticed or had on the matters raised in re-

spondents' statement and no witnesses were sworn, examined or testified in support thereof. No findings were made by the commission and no order, decision or determination was made either granting or denying the objections. Respondents did not then or thereafter request that a hearing be noticed or called to determine whether the area embracing respondents' farms should be excluded from the operation of the Revised Quarantine Regulation No. 7; nor did respondents request that witnesses be examined or that testimony be received or that the commission specifically take any action whatsoever to determine the truth of the claimed facts and to make or enter an order, decision or determination, predicated thereon.

On November 6th, 1961, the commission filed with the secretary of state pursuant to A.R.S. § 41–1004 its Revised Supplement No. 1 to Quarantine Regulation No. 7 fixing February 28th, 1962, as the final date for plowup. Respondents apparently treating the adoption of the Supplement No. 1 as a denial of those matters asserted in their statement commenced an action on November 20th, 1961, in the Superior Court of Maricopa County under the Administrative Review Act, A.R.S. § 12–901 et seq. The complaint sought to void and terminate Regulation No. 4 of Revised Quarantine Regulation No. 7 insofar as it affected respondents and for an adjudication that the menace of infestation from the pink bollworm of cotton was no longer present.

The commission appeared and moved to dismiss the complaint on the ground that there was nothing in the record for the court to review which was denied. Respondents then moved for a summary judgment which was granted and a judgment was entered on March 14th, 1962, directing that the commission stay and terminate Regulation No. 4 and all supplementary proceedings had under Quarantine Regulation No. 7. Thereupon, the commission applied to this Court for a writ prohibiting the enforcement of the judgment. After informal hearing on March 20th, 1962, this was granted peremptorily since it was the conclusion of a majority of this Court that the superior court was without jurisdiction to enter any judgment except that of dismissal.

The bare recital of the foregoing facts plainly indicates the complete want of jurisdiction in the superior court. By A.R.S. §§ 3–207 and 3–208 a means is provided by which the State Agriculture and Horticulture Commission can upon notice and hearing determine that a pest or disease threatens serious injury to the horticultural and agricultural industry of the state. Such a determination made in 1958 as to the pink bollworm of cotton was held to be constitutional. State v. Wacker, 86 Ariz. 247, 344 P.2d 1004.

Under A.R.S. § 12–902 the scope of appeal of the Administrative Review Act is limited to the review of a *final decision* of an administrative agency. The statute A.R.S. § 12–901 defines a decision as any decision, order or determination of an administrative agency which terminates the proceeding before the agency and as not meaning or including a rule or regulation issued to implement legislation administered by the agency. We said of this statute that the right of appeal "exists only by force of statute, and this right is limited by the terms of the statute." Knape v. Brown, 86 Ariz. 158, 342 P.2d 195. Unquestionably, the determination in 1958 was a final decision of an administrative agency within the meaning of A.R.S. § 12–901 and only subject to review as a final decision within 35 days thereafter. A.R.S. § 12–904.

The statement filed by respondents with the commission on October 25th, 1961, objected to the continuation of the cultural practice required by Regulation No. 4 of Revised Quarantine Regulation No. 7. While nominally it appeared to attack Quarantine Regulation No. 7, its thrust was more penetrating. Fundamentally, it challenged the factual determination made in 1958 because the objection to the fixing of any plowup date whatsoever was based on the claim that the danger from the pink bollworm of cotton was no longer present. Respondents thereby attempted to interject an issue foreign to the purpose for which the hearing was called. As stated, the issue of the menace to the state by the pink bollworm of cotton was determined finally and conclusively as against collateral attack by the failure to appeal within the 35 days. Allied Van Lines v. Parsons, 80 Ariz. 88, 293 P.2d 430; Parker v. McIntyre, 47 Ariz. 484, 56 P.2d 1337. Were such an attack permissible, there would be no end to the mischief created for no rule or regulation could be adopted, revised, amended or supplemented without a rehearing of the basic facts upon which the regulation was intended to operate.

This is not to say that respondents are without a means to compel the commission to examine into their complaint that the menace threatening serious injury to the agricultural industry of the state which was present in 1958 now no longer exists. Although no means has been provided by the legislature by which an interested party may compel such a determination, we have no hesitation in saying that due process and equal protection of law require that the commission entertain and consider at the request of a person affected by its orders a petition and after notice, conduct a hearing, make findings of fact and pronounce a decision which may be reviewed by the superior court pursuant to the Administrative Review Act. From the facts of the instant case it is quite clear that no direct

attack was made by respondents on the determination of 1958. If respondents bona fidely desired to be heard on such issue they should have petitioned for a hearing to that end and after notice to interested persons offered evidence in support thereof.

■ We point out that in such proceedings the applicant has the burden of proof. Application of Chicago & North Western Ry. Co., 79 Wyo. 343, 334 P.2d 519. While the commission is authorized by A.R.S. § 3–208, subd. C to change or modify its order when it finds that the original danger no longer is present, it is not compelled sua sponte to launch an investigation to redetermine what has already been decided. But between the dates of November 6th, 1961, the time of the certification of the plowup regulation with the secretary of state and February 28th, 1962, the last date for the consummation thereof, there was ample time to obtain a determination from the commission and a review by the superior court in accordance with the views herein expressed.

■ Accordingly, it is our conclusion that there being no final reviewable decision the superior court was wholly without jurisdiction to entertain the respondents' action and should have granted petitioners' motion to dismiss.

BERNSTEIN, C. J., and UDALL, Vice C. J., concur.

JENNINGS, Justice (dissenting).

The majority of the court has permitted the use of the writ of prohibition to substitute for an appeal and in doing so deprived the respondents of what I consider very substantial rights.

In the lower court, petitioners answered plaintiffs' (respondents) complaint; made motions to dismiss and to drop parties defendants; controverted plaintiffs' motion for summary judgment; and made motions to change the form of the summary judgment and to vacate the order granting plaintiffs' motion for summary judgment. After entry of the judgment against them, petitioners sought a writ of prohibition. If the petitioners desired to use prohibition, they should have done so before the final judgment was entered. In not doing so, they, in effect, took two shots at the question, awaiting, presumably in some hope, to see if the trial court would rule with them eventually on the merits of the case, and then, when it did not, they undertook to use the writ of prohibition.

This court has repeatedly discouraged this method of review. But, in doing what the majority has done here, they, in effect, encourage what this court has always undertaken to discourage, that is, to obtain review by special writ instead of by appeal. From the very beginning this court has followed the rule of not letting such a writ substitute for an appeal. Emery v. Superior.

Court, 89 Ariz. 246, 360 P.2d 1025; Miller v. Superior Court, 21 Ariz. 61, 185 P. 357; Sanford v. Dist. Court, 8 Ariz. 256, 71 P. 906; Territory v. Doan, 7 Ariz. 89, 60 P. 893. The reason for such a rule is well stated in U. S. v. Hoffman, 71 U.S. (4 Wall.) 158, 161, 18 L.Ed. 354 as follows:

"The writ of prohibition, as its name imports, is one which commands the person to whom it is directed not to do something which, by the suggestion of the relator, the court is informed he is about to do. If the thing be already done, it is manifest the writ of prohibition cannot undo it * * *."

It was error, not only in that particular, to grant the writ, but also on the grounds that the petition was not well taken when considered on the merits. I also think it was improper to have granted the peremptory writ after such a short oral argument and without having seen the file from the court below. In this respect, also, we have departed from the regular practice of this court.

The majority says that "the bare recital of the foregoing facts plainly indicates a complete want of jurisdiction in the superior court." My opinion is that the majority's bare recital, somewhat erroneous as it is, plainly indicates that the superior court had jurisdiction. I, therefore, completely disagree with the conclusions the majority has reached with reference to the jurisdiction of the trial court to hear and determine this case under the Administrative Review Act.

A.R.S. § 12–901, was quoted only in part by the majority. From paragraph 2 of this section, it appears that an aggrieved person may avail himself of a right to administrative review where there has been a "decision, order or determination of an administrative agency rendered in a case which affects the legal rights, duties or privileges of persons and which terminates the proceeding before the administrative agency." I cannot see how the majority could come to the conclusion that the trial court in this case did not have jurisdiction to review the act of the commission, considering the appearance that was made formally before the commission by the respondents demanding redress from the odious requirements of a part of the regulation in question. The commission received the formal written protest, caused it to be read into the record, stated that it would consider it before supplementing the regulation, and then did not assume any responsibility whatever with reference to it.

The commission's summary disposal of this question by setting a plowup date was, in effect, an order extending the regulations into the ensuing year, and respondents were absolutely correct in assuming that such action constituted a denial of the redress they were seeking, that is, revocation of the

regulation since the menace no longer existed. See A.R.S. § 3–208, Subsection C. The matter was before the commission, and, it was the commission's duty to give it every consideration, take evidence, if necessary, but in any event to terminate the regulation if the danger was no longer present. Since they did not, this was a proper matter for review under the Administrative Review Act.

The majority says that:

"While the Commission is authorized by A.R.S. § 3–208 subd. C to change or modify its order when it finds that the original danger no longer is present, it is not compelled sua sponte to launch an investigation to redetermine what has already been decided."

This statute does not merely *authorize* the commission; it says the commission *"shall* revoke the order establishing the zone" when the commission finds the danger is no longer present. In legislation such as this, where the words of the legislature obviously are intended to limit and delineate the powers and duties of the commission, the word *shall* puts a positive responsibility directly on the agency itself, and if, as has been held by the majority, "the applicant has the burden of proof", the clear intent of the legislature is violated. It can only be said that, by such an interpretation, the Supreme Court of this state is clothing the commission with a complete delegation of legislative power condemned in State v. Marana Plantations, Inc., 75 Ariz. 111, 252 P.2d 87, which the legislature itself specifically did not do.

Since A.R.S. § 3–208, Subsection C, describes the conditions under which the commission *shall* terminate its order establishing the zone, it must be required, whenever by suggestion of any kind it appears that there may be a question on this point, that the commission specifically make a finding. This they did not do. In support of the statement of the majority that the burden of proof lay with the respondents, when they were before the Commission on October 25, 1961, the majority cites the case of Application of Chicago & North Western Ry. Co., 79 Wyo. 343, 334 P.2d 519. It, in my opinion, does not support the point made. The differences between the regulation of railroad rights where the railroad company involved is seeking to eliminate some of its services is so distinct from our situation where the commission was only asked to abide by the mandate of the statute, a statute whereby it could lawfully continue regulations only where a continuing danger exists, is so great as to be of no persuasion whatever so far as I am able to see.

I cannot agree that the "issue of the menace to the state by the pink bollworm of cotton was determined finally and conclusively"

in 1958. To take that position is to give no meaning whatever to A.R.S. § 3–208, Subsection C, having reference to terminating the regulation. It must be kept in mind that Regulation No. 7 Revised is, in effect, an "establishment of a prohibited zone." The legislature obviously did not intend that the farmers would live forever under these prohibitions. Therefore, it is my opinion that the question must, under this statute, be forever open and that the commission must continue to find, particularly where these regulations are so handled as to apply from year to year, that the danger continues to exist warranting such regulations. This, it seems to me, is the only logical interpretation that can be placed on this statute, and, if we are going to apply the principles of law in the cases cited by the majority, Allied Van Lines v. Parsons, 80 Ariz. 88, 293 P.2d 430, and Parker v. McIntyre, 47 Ariz. 484, 56 P.2d 1337, then we are, in effect, absolutely changing the clear terms of the statute and invading the province of the legislature.

The learned Judge was not acting in excess of or beyond his jurisdictional powers. His judgment should be reinstated.

LORNA E. LOCKWOOD, J., by reason of illness did not participate in the determination of this cause.