CODY GAS COMPANY, Petitioner,

v.

PUBLIC SERVICE COMMISSION OF WYOMING, Wyoming Gas Co., and Marathon Oil Company, Respondents.

No. 87–62.

Supreme Court of Wyoming.

Jan. 27, 1988.

Richard P. Boley of Lathrop & Uchner, Cheyenne, and Michael L. Williams, Colorado Springs, Colo., for petitioner.

Joseph B. Meyer, Atty. Gen., Mary B. Guthrie, Sr. Asst. Atty. Gen., Roger C. Fransen, Asst. Atty. Gen., for respondent Public Service Com'n of Wyoming.

Bruce S. Asay of Kline, Buck & Asay, Cheyenne, for respondent Wyoming Gas Co.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

This is a certification from the district court, pursuant to Rule 12.09, W.R.A.P., for review of an order of the Public Service Commission of Wyoming finding that Cody Gas Company was encroaching upon Wyoming Gas Company's certificated area by selling natural gas to Marathon Oil Company, and is a case framed as a utility franchise contest based on a dispute of the point-of-delivery definition of certificated territory.

Petitioner Cody Gas states the issue:

"Did the Commission exceed its jurisdiction or authority in prohibiting Cody Gas Company, a division of The Coastal Corporation (Cody), from selling gas to Marathon Oil Company (Marathon) from facilities which it had previously granted Cody a Certificate of Public Convenience and Necessity and after finding that it would not be in the public interest for any other utility to sell gas to Marathon,"

and also defines the issues in its summary of argument as:

"I. The Commission's Order Must Be Set Aside Because There Was No Substantial Evidence to Support Its Finding That Even Though Cody Should be Permitted to Serve Marathon, It Was In the Public Interest That It Do So Only Through a Transportation Agreement.

"II. The Continuing Sale of Gas To Marathon By Cody Would Not Violate the Certificated Territories Concept."

The respondents are the Public Service Commission of Wyoming, and Wyoming Gas Co.; Marathon Oil Company declined to file a respondent's brief.

We will address these subjects by inquiry of (a) substantial evidence; (b) propriety of the application of the certificated-territories concept; and (c) jurisdiction and equity. We affirm the Commission decision.[1]

## I. FACTS

Wyoming Gas filed a complaint with the Wyoming Public Service Commission (PSC) against Cody Gas on October 9, 1985, alleging that its Certificate of Public Convenience and Necessity territory in Hot Springs County was subject to trespass by Cody Gas in sale of natural gas to Marathon. It was contended that Cody Gas had a gas delivery point within its territory from which the gas was transported and used within the area certificated by the PSC to Wyoming Gas. On October 29, 1985, Cody Gas filed its answer and counterpostured an application to expand its own certificated territory to permit continued service to Marathon. Responsively, Wyoming Gas filed its further application to expand its certificated territory to include all the area of the Grass Creek and Walker Dome oil and gas fields where Marathon used gas.

With Marathon next intervening, the complaint and applications were consolidated and set for hearing before the PSC. After a three-day hearing, by order of April 8, 1986, the PSC denied Cody Gas authority to expand its territory to allow sales of natural gas to Marathon, and

---

1. A further issue is raised by the PSC after initial brief was filed in this court: that the case may be moot because of post-hearing information that Marathon is disinclined to purchase from either party. The issue will not be considered because of an inadequate present record combined with petitioner's opposition and the possibility of a factual question now presented for the first time to this court.

granted in part the application of Wyoming Gas to expand its certificated territory. However, the PSC did preserve Cody Gas' authority to provide transportation service in its pipeline to Marathon. After denial of a petition for rehearing, Cody Gas petitioned for judicial review, as now certified to this court without district court review.

## II. SUBSTANTIAL EVIDENCE

Under § 16–3–114(c)(ii)(E), W.S. 1977, this court will set aside agency action if not supported by substantial evidence. In *Montana–Dakota Utilities Co. v. Wyoming Public Service Commission*, Wyo., 746 P.2d 1272, 1275–76 (1987), we reiterated:

"The standard of review for substantial evidence is well established in Wyoming:
" ' "We examine the entire record to determine if there is substantial evidence to support an agency's findings, and if there is, we will not substitute our judgment for that of the agency. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it may be less than the weight of the evidence but cannot be contrary to the overwhelming weight of the evidence." *Wyoming Insurance Department v. Avemco Insurance Company*, Wyo., 726 P.2d 507, 509 (1986) (citations omitted).' *Teton Valley Ranch v. State Board of Equalization*, Wyo., 735 P.2d 107, 113 (1987)."

Additionally, Wyoming precedent imposes:
" * * * The burden of proving a lack of substantial evidence is upon the party appealing the agency's determination.

*Laramie River Conservation Council v. Industrial Siting Council*, [Wyo.], 588 P.2d [1241,] 1253 [ (1978) ]; *Chicago & North Western Railway Company v. Public Service Commission of Wyoming*, 79 Wyo. 343, 334 P.2d 519 (1959). If there is present substantial evidence to support a finding of the agency, the ultimate weight to be given that evidence before the PSC, as the trier of fact, is to be determined by the PSC in light of its expertise and the experience of its members in such matters. *Williams v. Public Service Commission of Wyoming*, [Wyo.], 626 P.2d [564,] 573 [cert. denied 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981) ]; *Telstar Communications, Inc. v. Rule Radiophone Service, Inc.*, [Wyo.], 621 P.2d [241,] 245 [ (1980) ]; *Big Horn Rural Electric Company v. Pacific Power and Light Company*, Wyo., 397 P.2d 455 (1964)." *Mountain Fuel Supply Co. v. Public Service Commission of Wyoming*, Wyo., 662 P.2d 878, 883 (1983).

The hearing extended through three days, and created a transcript of 639 pages and voluminous exhibits in defining the factual status and posture of the litigants. Testing our decision by § 16–3–114(c), W.S. 1977,[2] and in answering the criteria of subsection (ii)(E), we find substantial evidence within the record to sustain the administrative decision made.

## III. PROPRIETY OF THE APPLICATION OF THE CERTIFICATED–TERRITORY CONCEPT

Petitioner Cody Gas alleges that the certificated-territory concept means that the

2. "(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
"(i) Compel agency action unlawfully withheld or unreasonably delayed; and
"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

"(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
"(B) Contrary to constitutional right, power, privilege or immunity;
"(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
"(D) Without observance of procedure required by law; or
"(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute." Section 16–3–114(c), W.S.1977.

PSC, under § 37–2–205(a), W.S.1977, can only regulate the building of facilities and not service within an area. It is argued that the point-of-delivery rather than point-of-use test should be applicable under § 37–2–205(a).[3] The evidence is unrefuted that Cody Gas sells natural gas to Marathon within Cody Gas' territory and that this gas is transported by marathon and utilized in Wyoming Gas' certificated territory.

▪ Although the argument challenges method rather than function, the Wyoming statute does not limit the PSC to regulation of facilities, as is contended. The issue is not factual in basic legal concept, but rather invokes the intrinsic authority of the PSC as an administrative agency, for which we find substantial justification for issuance of an area certificate. In *Tri-County Electric Association, Inc. v. City of Gillette*, Wyo., 584 P.2d 995, 1001 n. 6 (1978), it was said that

> " * * * the grant of a Certificate of Convenience and Necessity is the grant of a franchise to do business and provide a service in a *particular, designated area.*" (Emphasis added.)

Additionally, in analyzing specifically § 37–2–205, W.S.1977, and the certificate authority, it has been pointed out:

> "Before a public utility can build facilities or commence service to a particular area not previously certificated to a like utility, it must apply for and be granted a Certificate of Public Convenience and Necessity by the PSC which authorizes it to build the particular facility or serve the particular geographic area in question. *A public utility may generally*

provide service only within its duly authorized certificated area." (Emphasis added.) Carroll, *State Jurisdiction Over the Regulation of Energy Distribution and Other Public Utility Services*, XV Land & Water L.Rev. 5, 35 (1980).

The Supreme Court of Mississippi was faced with this issue of whether a certificate of public convenience and necessity was properly awarded on an area basis rather than on a facility basis in *Mississippi Power Company v. East Mississippi Electric Power Association*, 244 Miss. 40, 140 So.2d 286 (1962). In upholding the regulatory commission decision to certificate by area and not by facility, that court referred to the case as "peculiarly one that should be determined by a body such as the Public Service Commission." *Id.*, 140 S.2d at 288. See also *City of Kosciusko v. Mississippi Power & Light Co.*, Miss., 370 So.2d 1339 (1979).

▪ While § 37–2–205(a) does not define the certificated area concept, it does refer to territory with no certificate and extensions within or to territory already served by a utility. Additionally, the record indicates that regulation by area avoids duplication. Clearly, public service commissions have the power to grant blanket or area certificates, *Empire District Electric Company v. Cox*, Mo.App., 588 S.W.2d 263, 266 (1979); *State ex rel. Webb Tri-State Gas Co. v. Public Service Commission*, Mo.App., 452 S.W.2d 586, 588 (1970); and there was substantial evidence in the record in the instant case for the PSC to choose to regulate by area rather than facility. Statutory designation of an

---

**3.** "(a) No public utility shall begin construction of a line, plant or system, or any extension of a line, plant or system without having first obtained from the commission a certificate that the present or future public convenience and necessity require or will require such construction. This act shall not be construed to require any public utility to secure a certificate for an extension within any city or town within which it has lawfully commenced operation, or for an extension into *territory* contiguous to its line, plant or system for which no certificate is in force and is not served by a public utility of like character or for any extension within or to *territory* already served

by it, necessary in the ordinary course of its business. If any public utility, in constructing or extending its line, plant or system interferes or is about to interfere with the operation of the line, plant or system or any other public utility already authorized or constructed, the commission on complaint of the public utility claiming to be injuriously affected, may after hearing make such order and prescribe the terms and conditions for the location of the lines, plants or system affected, as to it are just and reasonable. The power companies may, without the certificate, increase capacity of existing plants." (Emphasis added.) Section 37–2–205(a), W.S.1977.

administrative agency function encompasses a reasonable delegation of process determination required or adopted for performance. *Teton Valley Ranch v. State Board of Equalization*, Wyo., 735 P.2d 107 (1987); *Gulf Oil Corp. v. Wyoming Oil and Gas Conservation Commission*, Wyo., 693 P.2d 227 (1985); *Great Western Sugar Co. v. Johnson*, Wyo., 624 P.2d 1184 (1981); *Barry & Barry, Inc. v. State Department of Motor Vehicles*, 81 Wash.2d 155, 500 P.2d 540 (1972).[4] Any constraints on methods available to the agency to exercise designated responsibilities should be emplaced by specific statutory restrictions if constitutional interests are otherwise protected.[5] Administrative Law Symposium, 16 Wyo.L.J. (1962). See *Public Service Commission v. Formal Complaint of WWZ Co.*, Wyo., 641 P.2d 183 (1982), invoking statutory construction of agency authority.

## IV. JURISDICTION AND EQUITY

■ Petitioner also argued that the PSC does not have the jurisdiction to prohibit Cody Gas from selling gas to Marathon. We disagree. Clearly, Cody Gas and Wyoming Gas are public utilities. Section 37-2-112, W.S.1977 expressly grants the PSC powers over public utilities.[6]

" * * * The P.S.C. is authorized in the event of a conflict between two utilities to make such order and prescribe such conditions as seem just and reasonable, *Dubois Telephone Exchange v. Mountain States Telephone & Telegraph Co.*, Wyo.1967, 429 P.2d 812, citing § 37-31, W.S.1957, now § 37-2-205(a), W.S.1977." *Tri-County Electric Association, Inc. v. City of Gillette*, supra, 584 P.2d at 1003-1004.

■ Petitioner alternatively claims that leaving Cody Gas with just the transportation service is not equitable. In essence, this is a restated sufficiency-of-the-evidence presentation for exercised discretion. The PSC's decision showed that the competing interests of two utility companies and their customers were discretionally balanced in decision concept. The PSC weighed and balanced the public interest, examining the benefits Wyoming Gas' customers would receive and the costs to the customers of Cody Gas. Although Wyoming Gas had asked the PSC to enjoin Cody Gas from making any deliveries of natural gas to Marathon, the PSC authorized Cody Gas to enter into a transportation agreement and receive the benefits of such. Alternatives were weighed, and the PSC chose a result that would only partially benefit Cody Gas in conflict with Wyoming Gas. This court cannot invade the decisional processes of the administrative agency if the evidentiary test of sufficiency is met, constitutional rights are not ignored, and statutory justification for the

---

**4.** See 2 K. Davis, Administrative Law Treatise § 1.13, p. 57:

"The main focus of this treatise is on governmental mechanisms for *fairly and effectively* carrying out the policies adopted by the legislative body. The constant emphasis is on fairness and effectiveness of administrative processes and never on the supposed undesirability of the legislative policies." (Emphasis added.)

See also *Id.*, Supplement § 3.15, p. 8, and cases cited on requirement that broad authorization demands procedural and judicial safeguards against arbitrary, unreasonable, or oppressive conduct of the agency.

"Control of discretion is not typically a judicial function, nor is there promise of any assured gain to be derived from superimposing the discretion of the judge upon that of the administrator. Rather, the problem of controlling the scope of administrative discretion is fundamentally political; it is for the legislature, primarily, to determine the breadth of discretionary power to be vested in a branch of the government which is comparatively free of popular control." 2 Cooper, State Administrative Law, Ch. XIX, Scope of Review: Adjudication, p. 670 (1965).

**5.** "The difference between the legislative and judicial choices lies in the range of criteria that are available to the decisionmaker for the making of his choices." Christie, *An Essay on Discretion*, 86 Duke L.J. 747 (1986). See comprehensive discussion of judicial responsibility, Gerwin, *The Deference Dilemma: Judicial Responses to the Great Legislative Power Giveaway*, 14 Hastings Const.L.Q. 298 (1987); Note, *Deference to Discretion: Scalia's Impact on Judicial Review of Agency Action in an Era of Deregulation*, 38 Hastings L.J. 1223 (1987).

**6.** "The commission shall have general and exclusive power to regulate and supervise every public utility within the state in accordance with the provisions of this act." Section 37-2-112, W.S.1977.

activity is provided. *Western Radio Communications, Inc. v. Two–Way Radio Service, Inc.*, Wyo., 718 P.2d 15 (1986); *Great Western Sugar Co. v. Johnson*, supra; 2 Schwartz, Administrative Law § 10.8, p. 600. See § 16–3–114(c).

 When operating in the field of a regulated monopoly as a business choice, substantive principles of administrative law apply to the certificated entity. The appeal parameter of regulation is legal discretion of the agency, and complaints founded on equity cannot seriously be presented if legal standards and administrative rules are followed. Failure or neglect of the agency to comply afford right to legal redress, not equitable inquiry.

Finding substantial evidence in the record to support the Public Service Commission's decision, and that the Public Service Commission had the jurisdiction to act in this matter, we uphold the agency determination.

Affirmed.