[Civil No. 1439.   Filed June 2, 1916.]

[157 Pac. 977.]

JOSEPH LAMBEYE, Appellant, v. RAMON GARCIA, Appellee.

1. WATERS AND WATERCOURSES—IRRIGATION—WASTE WATER.—One who appropriates waste water flowing off the premises of another after it has been used for irrigating can claim no vested right in his appropriation; for the original appropriator may destroy such rights either by using less water or by ceasing the appropriation.

2. WATERS AND WATERCOURSES—IRRIGATION.—A prior appropriator whose waste water plaintiff formerly used joined in a government project, whereby he was supplied with water and subscribed to a corporation distributing the water under a new system of canals. The corporation managing the canals contemplated no waste water and proceeded by making new laterals, to collect all waste water and use it upon lands situated below. *Held,* that plaintiff could not restrain the corporation from diverting the waste water from his premises; for he had no vested rights in the waste water, and it was within the power of the irrigation company to conserve such water, though it was not personally recaptured by the appropriator from whose land plaintiff originally received it.

3. WATERS AND WATERCOURSES—ADMISSIBILITY.—In such case the articles of incorporation of the company distributing the water, as well as the contract between it and the government, are admissible in evidence.

[As to prescriptive right of land owner to waste water coming from land of another, see note in Ann. Cas. 1915C, 1165.]

APPEAL from a judgment of the Superior Court of the County of Maricopa.   John C. Phillips, Judge.   Affirmed.

Messrs. Baker & Baker, for Appellant.

Messrs. Kibbey, Bennett & Curtis, for Appellee.

ROSS, C. J.—This is an equitable action involving the right to certain waste waters.   The appellant, who was the plaintiff below, is the owner of the northeast quarter of section 35, township 1 north, range 2 east, in Maricopa county.   He is also the owner of the Marmonier canal, which heads in the

Salt river about seven miles northeasterly above his lands.
This canal is, and has been for a number of years, his prin-
cipal source of water used in irrigating his land.   The north-
east quarter of section 31, said township and range, is owned
by one A. Weiler, who prior to February 25, 1913, obtained
his water for irrigation purposes through the Tempe canal,
also heading in the Salt river some distance northeasterly
from his land.

Some five years prior to February, 1913, appellant con-
structed a ditch from the Weiler land to the Marmonier
canal for the purpose of catching and diverting the overflow
and waste waters from the Weiler land into the Marmonier
canal and thence to his land.   With this ditch he captured
the surplus and waste waters from Weiler's land and used
the same to irrigate his land from the time of its construction
down to March, 1913.   Some time prior to February, 1913,
the occupants of the northeast quarter of said section 31
(the Weiler land) and numerous other persons owning and
occupying lands in that vicinity, for the purpose of procur-
ing water from the Salt river and from the Roosevelt reser-
voir, under the Reclamation Act, for the irrigation of their
lands, associated themselves together under the laws of the
state of Arizona as a body corporate under the name of the
Western Canal Construction Company.   This construction
company thereupon constructed what is known as the West-
ern canal, which connects with the consolidated or Mesa canal
on the south side about twelve miles easterly from said section
31, and runs thence southwesterly along and near said section
31.   Since the completion of the Western canal, February,
1913, all of the waters used for irrigation purposes on the
Weiler tract have been delivered through the Roosevelt
reclamation project and under the control and regulation of
the national government.   Since February, 1913, no water
has been delivered to said Weiler tract by means of the Tempe
canal or any extension or lateral thereof.

In February, 1913, the Western Canal Construction Com-
pany constructed a lateral from the Western canal on the
north side of section 31, so that it intercepted appellant's
waste ditch from the Weiler tract to the Marmonier canal.
Thereupon appellant, for the purpose of collecting and cap-
turing the waste from the Weiler tract as he had theretofore

done, constructed another ditch so as to intercept such waters before they reached the government lateral, and by means of said ditch he continued to collect and convey said waters. to the Marmonier canal, and thence to his premises. In April, 1913, the Reclamation Service at the corner of sections. 30, 31 and 36 constructed a culvert under the road which runs east and west between sections 30 and 31, so as to divert the water from the new waste ditch of appellant into the government lateral ditch conveying water to the appellee's. premises in the northwest corner of section 25.

The appellant, in order to keep the waste water in his ditch and to prevent it from being diverted into the government lateral, placed a tappoon over the mouth of the culvert. The appellee, under the orders and directions of the government. zanjero, removed the tappoon, so that the waste waters from the Weiler land and some other lands flowed through the culvert into the government lateral; thence on to his land for the purpose of irrigation. Whereupon the appellant brought this action to restrain the appellee from interfering with his said waste ditch and the surplus and waste water running therein from the Weiler lands. The appellee is a member and stockholder of the Western Canal Construction Company, and by virtue thereof entitled to water to irrigate his land from the Roosevelt reclamation project. The appellant is not entitled as a stockholder to any water from the government project. to irrigate the northeast quarter of section 35, township 1 north, range 2 east; it not being listed under the project.

From these undisputed facts, which appear in the pleadings and in the evidence, judgment was in favor of appellee. The appellant appeals and assigns errors: First, that the court erred in the admission of evidence over his objections; and, second, that the judgment is not sustained by the evidence,. and is contrary to the law.

We adopt the order of treatment of the questions raised followed by the appellant. He first argues that the evidence is insufficient to sustain the judgment and that the judgment is contrary to the evidence and the law. It is said that the waste and surplus water that escaped from the Weiler lands,. being appurtenant to the land, belonged to Weiler until released by him with no intention of recapturing it; that such water was subject to appropriation and use by appellant with-

out interference or interruption by anyone except Weiler; that Weiler is not a party to this suit contesting appellant's right to the water, nor has he taken steps to conserve and apply it upon his land without any waste or surplus; that his source of supply continued to be from the Salt river after he had come under the Roosevelt reclamation project as it had been before when his water was delivered to him through the Tempe canal, and also that the waste continued under the new arrangement as it had under the old; that, although the Weiler land and the land of appellee were under the reclamation project and had paid and were paying the Reclamation Service for carrying and delivering water to them through the Western canal, still neither appellee nor the Reclamation Service could capture, collect and divert the surplus and waste water in question, and in this manner deprive appellant of its use upon his land, even though it is not under the reclamation project, and did not contribute in any manner toward the construction of the Western canal.

We do not think that appellant's position is supported by the law. At no time since he has been appropriating the waste water from the Weiler land could he legally claim or demand that Weiler release or turn to him any water because Weiler was entitled to divert upon his land only so much water as was necessary to irrigate it; any excess of the amount so needed properly belonging to the natural stream or source of supply and should be left there. The appellant's supply of water from this source in all events was very precarious, depending upon Weiler's diverting upon his land more water than he required, or a wasteful and profligate use of it. A frugal and economic use of his appropriation by Weiler might cut off the waste or reduce it to a minimum, and appellant could not complain. Indeed, Weiler might cease to use his ditches or laterals entirely and suspend the use of his appropriation for the time being without infringing any right of appellant. The appellant could capture the waste water so long as it continued, but he did not thereby become vested with any control over the ditches or laterals of Weiler or the water flowing therein, nor did it obligate Weiler to continue or maintain conditions so as to supply appellant's appropriation of waste water at any time or in

any quantity when acting in good faith. *Green Valley Ditch Co.* v. *Schneider*, 50 Colo. 606, 115 Pac. 705.

Kinney on Irrigation and Water Rights, section 661, in discussing waste water, says:

"It often happens that the prior appropriator, in irrigating the lower portions of his land, is compelled by the lay of the land to let the water run off from his property to the lands of others, in places where it is impossible to return the water to the natural stream. And it often happens that the water flows upon lands of those who are either not appropriators from the stream, or are appropriators much later than others, who in point of time are entitled to the use .of the water. This water is deemed by the courts to be waste water. And the question now arises: Can the owners of the lands on which it runs secure a permanent right therein to its continuous use? The authorities hold that while the water so denominated as waste water may be used after it escapes, no permanent right can be acquired to have the discharge kept up, either by appropriation, or a right by prescription, estoppel or acquiescence in its use while it is escaping, and that, too, even though expensive ditches or works were constructed for the purpose of utilizing such waste water, unless some other element enters into the condition of affairs, other than the mere use of the water. In other words, the original appropriators have the right, and in fact it is their duty, to prevent, as far as possible, all waste of the water which they have appropriated, in order that the others who are entitled thereto may receive the benefit thereof."

It is quite clear, therefore, that the appellant has no vested right either in the waste waters in controversy or in the ditches and laterals used by Weiler to divert his water from the Tempe canal as formerly, or from the Western canal, as now he is doing, and that Weiler could deprive him of his enjoyment thereof without incurring any legal liability, either by preventing any waste, or by recapturing the waste or surplus water from his land and appropriating it to some beneficial use or purpose.

While Weiler personally is not recapturing and appropriating the surplus and waste water from his lands on section 31, he has, as the facts appear, associated himself with the appellee, Garcia, and many others owning land in his vicinity,

and organized and bought stock in the corporation that constructed the new system of canals, ditches and laterals covering his lands and the lands of the other stockholders, known as the Western canal, to be operated, controlled and managed under the Roosevelt reclamation project and as a part of the Salt River Valley Water Users' Association system of irrigation. The policy of this system is to have no waste water; its ditches and laterals being so constructed as to capture what is commonly known as waste and surplus water from the higher lands and convey it successfully in turn to the lower lands to be there appropriated and used.

The Western canal system was constructed by Garcia and his associates at a cost exceeding $50,000, and for the purpose of irrigating their land. Appellant's land, for which he now claims the right to use this surplus and waste water, was not listed in this Western canal system; he paid not a cent for the water that he now seeks to have applied to his land. Clearly the water carried in the Western canal system belongs to the members and stockholders of the Western Canal Construction Company in the proportion that each has contributed to its construction and to the amount of his appropriation. The evidence shows that appellee Garcia needed the water diverted from appellant's waste ditch into the government lateral to irrigate his land, and that the government lateral, together with the culvert constructed by the Reclamation Service, would have captured and collected such waste waters in the absence of appellant's waste ditch, and was so designed to capture such waste and surplus water.

It would seem that a system of laterals and ditches so organized and systematized as to permit no waste within the system and to save and conserve all of the water is not only commendable, but well within the legal rights of the stockholders of such system. The plan among the stockholders of the Western canal system, devised in contemplation of excess or waste waters from the higher lands to the lower and for the purpose of capturing and using the same among its membership, and thereby exclude strangers from participating in the fruits of their labor and outlay by preventing the escape of any water, would, if adequate for the purpose designed, effectually prevent the appellant from receiving any water, and we can call to mind no reason why this may not

be done. The instrumentality—the government lateral—by which to capture this water was upon the ground, and the appellee, Garcia, in removing the obstruction from the face of the culvert, thereby permitting the water to go into this instrumentality so provided, was acting under the direction of the water-master or zanjero of the Reclamation Service and in his own right as a stockholder of the Western Canal Construction Company.

It would seem to us that members and stockholders of the Western canal system are acting within their rights in the execution of their plan to conserve all of the water for the use of its membership by preventing strangers from capturing and appropriating water commonly known as surplus or waste water, and that the appellee's act, of which complaint is made, was violative of no right of the appellant. Of course, while the water was going to waste the appellant by capturing it was entitled to use it; but, where the appropriator and owner of water has entered into a plan or scheme with a number of others associated with him, by which the overflow is to be caught and collected for the benefit of all the members of the association, the question of waste water is eliminated, and likewise the appellant's claimed rights.

The evidence objected to and of which complaint is now made was both oral and documentary. We do not think that the oral evidence was very material, and some of it may have been of doubtful competency. Viewed in any light, it could have had little or no weight with the court in the decision of the case. The documentary evidence objected to was the articles of incorporation of the Western Canal Construction Company and the contract between this corporation and the United States government as to the construction of the Western canal system of irrigation and its control and management. It is very apparent that this evidence had a direct bearing upon the issue involved.

Judgment is affirmed.

FRANKLIN, J., concurs.

CUNNINGHAM, J. (Concurring).—Plaintiff's right to recover necessarily depends upon whether the water draining from the irrigated lands situate in section 31, township 1

north, range 2 east, and collected by the plaintiff's ditch, was in fact "waste water" when collected by him. Unless the owner of the water abandoned the excess without the intention of repossession after it had been allowed to flow over the irrigated lands of the consumers, the drain waters did not become in character "waste water," and thereby become subject to capture by anyone other than the owner, the appropriator from the river, creek, or running stream of public water, because such appropriator, as described in this record, who is shown to have been the first appropriator of such water, for the purposes herein mentioned, as declared by paragraph 5337 of the Civil Code of 1913, "shall always have the better right to the same."

The appropriator is thereby the grantee from the state of the title to the water appropriated from such public source for the purpose of furnishing consumers water for irrigation. When the water is delivered to the consumer, the consumer takes title to the amount of water he requires for the irrigation of his lands and for other purposes incidental thereto, but he acquires no title to the water delivered in excess of his requirements. As a consequence, the consumer has no such title in the excess water delivered to his lands as gives him the right to abandon it and thereby give to such excess when abandoned the character of "waste water." The appropriator of the water has the title thereto, and such excess water cannot be intentionally abandoned so as to give to it the character of "waste water" by anyone other than the owner of the title thereto. In this case the appropriator of the water from the public waters of the state could abandon the water so as to give to such water the character of "waste water," and thereby leave it in the condition to be collected, captured and possessed by one who is not an appropriator from the public streams nor who is not a consumer of water furnished by such appropriator.

Whether such owner did abandon such excess water delivered to its consumers by such delivery is a question of fact to be determined by the trial court from all the evidence in the case. Upon this issue the evidence is conflicting. The testimony of the plaintiff tends to show that the excess water was delivered to the consumers and drained off their lands, and was collected by plaintiff in a ditch constructed

by him, and would justify the inference that such water was intentionally abandoned at the time it was delivered to the consumer. The testimony of the defendant tends to show that the appropriator of the water constructed instrumentalities such as a culvert and connecting lateral ditches for the purpose of collecting such drain water and conveying such water to other of its consumers, and would justify the trial court in drawing the inference that the said appropriator did not intend to abandon the excess water delivered to consumers located in section 31 aforesaid.

The trial court by its judgment must be deemed to have given the greater weight to the evidence of the defendant, and concluded that the water collected by the plaintiff in his ditch, and by the defendant diverted into the Western Canal Construction Company's culvert and lateral ditches, was not "waste water" in fact.

The rule is that this court will not disturb a judgment based upon facts determined by the trial court from conflicting evidence. The judgment has the support of substantial evidence, and is presumed correct. For such reason, I am of the opinion the judgment should be affirmed.

For authorities passing on the question of appropriation of waste water not in channel, see note in 6 L. R. A. (N. S.) 1104. And as to right to store appropriated water, see notes in 46 L. R. A. 322; 17 L. R. A. (N. S.) 329.