547 P.2d 494
**Richard F. McCLELLAN, Appellant,**

**v.**

**Robert JANTZEN, Director of the Game and Fish Department of the State of Arizona, Appellee.**

**No. I CA–CIV 3183.**

Court of Appeals of Arizona,
Division 1,
Department B.

March 23, 1976.

Rehearing Denied April 26, 1976.
Review Denied May 18, 1976.

Lewis & Roca, by John P. Frank, Douglas L. Irish, Phoenix, for appellant.

Bruce E. Babbitt, Atty. Gen., by Peter C. Gulatto, Asst. Atty. Gen., Phoenix, for appellee.

## OPINION

JACOBSON, Presiding Judge.

The sole issue raised by this appeal is whether the stocking of a lake with fish by the Arizona Game & Fish Department is an appropriation of the waters of that lake requiring a permit from the State Land Department.

The facts giving rise to the legal question presented are not in dispute. In 1903, appellant Richard F. McClellan's predecessor in interest appropriated the waters from springs known as the Maxwell Springs, and impounded these waters behind an earthen dam which subsequently became known as Sierra Blanca Lake. The bulk of the lake itself is located on land belonging to the United States Forest Service[1] which McClellan holds under a non-exclusive use permit. The water from this reservoir is used by McClellan on his adjacent fee land for irrigation, stock watering and domestic purposes.

It is the contention of appellee, Robert Jantzen, Director of the Arizona Game & Fish Department (Department), that because of enlargement of the original dam and the entrapment of non-spring waters flowing into the reservoir, there exists in Sierra Blanca Lake unappropriated public waters, unrelated to the appropriated Maxwell Springs water feeding the reservoir.

In March of 1973, the Department filed an application with the State Land Department to appropriate any unappropriated waters of the reservoir for fishing and recreation purposes. Pursuant to notices issued by the State Land Department, McClellan and others duly filed protests to the Department's application for appropriation and hearings were held before the State Land Department on September 25, 1975. This court has no knowledge as to the action taken by the State Land Department on that application.

In 1974, and again in 1975, the United States Forest Service requested the Department to stock the reservoir with fish. It is the Department's intention to comply with these requests and stock fish in the lake without waiting for a determination of its application to appropriate now pending before the State Land Department.

Upon being notified of the Department's intent to stock the lake, McClellan brought an action to enjoin the proposed stocking pending a determination by the State Land Department of the Department's right to appropriate the waters at all. A temporary restraining order, after notice, was issued by the superior court.

On June 27, 1975, the matter of a preliminary injunction was heard and the trial court denied the injunction. The trial court extended the temporary restraining order, however, to permit application for relief to this court on an accelerated basis. This court issued a stay pending appeal and granted the parties an accelerated appeal.

The legal issue thus drawn is whether the act of stocking of the reservoir with fish would constitute an act of appropria-

---

[1]. There exists a dispute as to whether the earthen dam containing these waters is on land owned by McClellan or the Forest Service. This dispute is not material to the issues raised on this appeal.

tion requiring a permit from the State Land Department.

It is clear that "all . . . lakes, ponds and springs on the surface," belong to the public, A.R.S. § 45–101(A), and that any appropriation of that water is under the control and supervision of the State Land Department. A.R.S. § 45–102(A). It is also clear that one of the purposes for which an appropriation of water may be made is "recreation, [and] wildlife, including fish," A.R.S. § 45–141 (Supp.1975). Thus, A.R.S. § 45–142(B) (Supp.1975) provides that an application with the State Land Department to appropriate water shall include "if for recreation or wildlife, including fish, the location and the character of the area to be used and the specific purposes for which such area shall be used."

■ The appropriation of water for "wildlife, including fish" was added to the purposes for which an appropriation of water could be made in 1941. Session Laws 1941, Ch. 84. However, the right of the *State of Arizona* to make such an appropriation for this purpose was not added until 1962. Session Laws 1962, Ch. 113, § 1. Did the legislature intend, by the amendment to the statute in 1962, to make merely the stocking of fish in the waters of this state an "appropriation" of that water requiring a permit from the State Land Department? We believe not.

■ Originally, the concept of "appropriation of waters" consisted of the diversion of that water with the intent to appropriate it and put it to a beneficial use. *Arizona v. California*, 283 U.S. 423, 51 S. Ct. 522, 75 L.Ed. 1154 (1931). Being the first to have properly performed these functions, the appropriator acquired a vested right to the use of these waters as against the world which could not be taken from him except by his consent. *Gila Water Co. v. Green*, 27 Ariz. 318, 232 P. 1016

(1925), modified in 29 Ariz. 304, 241 P. 307 (1925); *Adams v. Salt River Valley Water Users Ass'n.*, 53 Ariz. 374, 89 P.2d 1060 (1939). The concept of diversion to effect the beneficial use was consistent with the stated purposes for which an appropriation could be made prior to 1941, that is, domestic, municipal, irrigation, stock watering, water power and mining. However in 1941 when "wildlife, including fish" and in 1962 when "recreation" were added to the purposes for appropriation, the concept of *in situ* appropriation of water was introduced—it appearing to us that these purposes could be enjoyed without a diversion. We find nothing, however, which would indicate that the legislature intended that such an *in situ* appropriation would not carry with it the exclusive vested rights to use the waters for these purposes. We therefore find that by these amendments the legislature intended to grant a vested right to the State of Arizona to subject unappropriated waters exclusively to the use of recreation and fishing. Conceivably then, and assuming a first in right appropriation, the Game & Fish Department could prohibit the draining of a lake for irrigation purposes for example, if that draining interfered with the fish therein. This obtaining of a vested right to use the water for fish is to be contrasted with the statutory authority vested in the Department by A.R.S. § 17–231 (B)(6) [2] allowing it to stock fish in public and private waters.

■ It has always been the policy of this state to make the largest possible use of water. *Pima Farms Co. v. Proctor*, 30 Ariz. 96, 245 P. 369 (1926). Consistent with this policy has been the holding that even appropriated water can be used by another, as long as that use does not interfere with the prior appropriation. *Lambeye v. Gracia*, 18 Ariz. 178, 157 P. 977 (1916). In this regard, the court takes judicial notice that subsequent to 1941 when

---

2. A.R.S. § 17–231(B)(6) provides:
 "B. The commission may:
  \*     \*     \*     \*     \*
  ■■■■

"6. Purchase, sell or barter wildlife for the purpose of stocking public or private lands and waters . . .."

**226**

appropriation of water for fishing was introduced and prior to 1962, when the State of Arizona could make such an appropriation, the Game & Fish Department of this state engaged in the practice of stocking fish in the streams, rivers and reservoirs located in the state.

■ In this case, the trial court specifically found that the mere stocking of fish in the Sierra Blanca Lake would not interfere with McClellan's prior appropriation of Maxwell Springs, a finding that is supportable by the record. This does not mean that the Department acquires any vested rights in Sierra Blanca Lake by exercising its powers under A.R.S. § 17–231 in stocking, and it may well be that in years of drought, if McClellan uses his prior appropriation to its fullest, the fish may find themselves without water to swim in, but that is a risk the Department takes in stocking the water when no appropriative right has been acquired. Nor do we find that the Department's application to appropriate waters in Sierra Blanca Lake to be inconsistent with its present intent to stock that lake with fish without an appropriation. It is the Department's contention that there exists in the lake unappropriated waters, a matter properly to be determined by the State Land Department. If the State Land Department determines that unappropriated waters exist in Sierra Blanca Lake, and if it further determines that the Game & Fish Department should prevail on its application to appropriate these unappropriated waters, then McClellan cannot use these excess waters for his personal purposes, thus assuring that the water will be available for the fish. If, however, the Department does not prevail upon its application then the risk previously referred to, of having the reservoir pulled dry, still exists.

We therefore hold, as a matter of law, that the stocking of fish by the Department does not constitute an act of appropriation giving rise to a vested right in the waters stocked, and therefore it need not obtain a permit from the State Land Department to engage in that activity.

McClellan also asserts a right to enjoin a non-trespassory nuisance created by the public in coming to his property to retrieve the fish placed there by the Department. If we understand appellant's argument in this regard, it is bottomed upon the alleged illegality of the Department's stocking efforts in the first instance. Since we have held this activity not to be illegal, McClellan's argument in this regard must fail.

The judgment of the trial court is affirmed.

HAIRE, Chief Judge, Division 1, and EUBANK, J., concurring.