118 P.3d 1110

PHELPS DODGE CORPORATION,
Plaintiff/Appellant,

v.

ARIZONA DEPARTMENT OF WATER
RESOURCES; USDA Forest Service,
Tonto National Forest; Salt River Val-
ley Water Users' Association and Salt
River Project Agricultural Improvement
and Power District, Defendants/Appel-
lees.

No. 1 CA–CV04–0491.

Court of Appeals of Arizona,
Division 1, Department D.

Aug. 30, 2005.

Review Denied March 14, 2006.

Ryley Carlock & Applewhite, P.A. by Cynthia M. Chandley, John C. Lemaster, Sean T. Hood, Phoenix, Attorneys for Plaintiff/Appellant.

Arizona Department of Water Resources by W. Patrick Schiffer, Chief Counsel Janet L. Ronald, Deputy Counsel, Phoenix, Attorneys for Appellee Arizona Department of Water Resources.

Paul K. Charlton, United States Attorney by Sue A. Klein, Assistant United States Attorney, Phoenix, United States Department of Justice Environment and Natural Resources Division By Katherine J. Barton, Pro Hac Vice, Washington, DC, and U.S. Department of Agriculture by Randall J. Bramer, Office of General Counsel, Golden, CO, Attorneys for Defendant/Appellee USDA Forest Service.

Salmon, Lewis & Weldon, P.L.C. by John B. Weldon, Jr., Mark A. McGinnis, Rebecca C. Goldberg, Phoenix, Attorneys for Defendants/Appellees Salt River Project.

Terry Goddard, Attorney General by James F. Odenkirk, Assistant Attorney General, Joy Hernbrode, Assistant Attorney General, Phoenix, Attorneys for Amicus Curiae Arizona Game and Fish Commission.

## OPINION

KESSLER, Presiding Judge.

¶ 1 This appeal arises out of a challenge to an application for an appropriative water right to instream flows filed with the Arizona Department of Water Resources ("ADWR"). We are called upon to decide whether Arizona law allows the ADWR to issue permits for instream water rights, and whether the ADWR violated the Arizona Administrative Procedure Act (the "APA") by using the *Guide to Filing Applications for Instream Flow Water Rights in Arizona* (December 1991) ("1991 Instream Flow Guide"). We hold that the ADWR has the authority to issue permits for instream water rights and that Phelps Dodge Corporation ("Phelps Dodge") did not preserve its claim that ADWR violated the APA by applying the 1991 Instream Flow Guide.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 The United States Forest Service (the "Forest Service") applied to the ADWR for a permit to appropriate the waters of Cherry Creek, a tributary of the Salt River located in the Tonto National Forest. The permit would grant the Forest Service the right to certain instream flows for fish, wildlife and recreation purposes. The ADWR thereafter issued a notice to interested parties concerning their right to file protests to the Forest Service's application (the "Application").

¶ 3 The Salt River Project Agricultural Improvement and Power District ("SRP") protested on behalf of the Salt River Valley Water Users' Association, stating that SRP had previously appropriated all normal flow and flood waters of the Salt River, the Verde River, and their tributaries, including Cherry Creek. According to SRP, the Application conflicted with its vested rights. Other parties, including Phelps Dodge, also filed protests. The ADWR referred the protests to the Office of Administrative Hearings, which in turn bifurcated the issues. The first phase, addressing whether the ADWR has authority to issue permits for instream water rights, is the subject of this appeal.

¶ 4 The Administrative Law Judge ("ALJ") conducted a hearing on the first phase issues, and concluded:

> [T]he Arizona Legislature has granted the Department the authority to issue permits to appropriate water for instream flows. Furthermore, the Administrative Law Judge concludes that Arizona's prior appropriation system does *not* require an actual physical diversion of water where no diversion is necessary to put the water to beneficial use.

The ADWR director subsequently adopted the ALJ's findings of fact and conclusions of law.

¶ 5 Phelps Dodge unsuccessfully appealed the decision to the superior court, which held that the "statutory framework appears to grant the ADWR the authority to issue permits to appropriate water for instream flows." The court also rejected Phelps Dodge's argument that any authority the

ADWR had to issue permits for instream water rights was negated by its failure to adopt the 1991 Instream Flow Guide as a rule. Phelps Dodge timely filed this appeal. This Court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## DISCUSSION

¶ 6 Phelps Dodge argues the ALJ and the superior court erred in holding the ADWR may issue a permit for instream water rights to the Forest Service because the ADWR has no explicit statutory authority to issue such permits. It also contends the ADWR may not rely upon the 1991 Instream Flow Guide without first promulgating it as a rule. We address each argument in turn.

### I. Instream Water Rights

¶ 7 According to Phelps Dodge, since Arizona follows a prior appropriation system of water rights, a physical diversion is an essential element of an appropriation. Since an instream water right by definition does not involve a physical diversion, Phelps Dodge reasons, it cannot be a valid appropriation of water necessary to effect a water right. Accordingly, Phelps Dodge contends the ADWR is without authority under Arizona law to issue instream water rights.

¶ 8 In response, the ADWR argues that the statute confers authority to issue instream water permits. We affirm the superior court's ruling because Arizona's historic prior appropriation scheme, the current water use statute, and the ADWR's interpretation of Arizona water law do not affirmatively require a diversion to establish an instream or in situ water right.

¶ 9 We review questions of statutory interpretation de novo. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). When interpreting statutes, we strive to "discern and give effect to legislative intent." *People's Choice TV Corp. v. City of Tucson*, 202 Ariz. 401, 403, ¶ 7, 46 P.3d 412, 414 (2002). A

statute's meaning is conclusive if it is unambiguous considering the statute's language as a whole. *US West Communications v. City of Tucson*, 198 Ariz. 515, 520, ¶ 12, 11 P.3d 1054, 1059 (App.2000). "If ambiguity exists, however, we determine legislative intent by looking first to the text and context of the statute and then considering its historical background, effects and consequences, and its spirit and purpose." *Kent K. v. Bobby M.*, 210 Ariz. 279, 283, ¶ 14, 110 P.3d 1013, 1017 (2005).

¶ 10 General water usage rights are governed by Title 45, Chapter 1 of the Arizona Revised Statutes. Under the statutory scheme, "beneficial use shall be the basis, measure and limit to the use of water." A.R.S. § 45–141(B) (2003). Beneficial uses include "recreation, [and] wildlife, including fish . . . ." A.R.S. § 45–151(A) (2003). In addition, the surface waters of lakes, ponds, or streams, are subject to appropriation and beneficial use.[1] A.R.S. § 45–141(A). The sections defining an acceptable appropriation and beneficial use do not explicitly refer to either instream flow rights or a diversion requirement.

¶ 11 A party must apply to the ADWR director for a permit to make an appropriation and acquire the right to a beneficial use of water. A.R.S. § 42–152(A) (2003). An application must state the applicant's name and address, the water supply from which the right is sought, the nature and amount of the proposed use, the point of diversion and a description of the works by which the water will be put to use, and the time frame for construction of such works. *Id.* In addition, an application for fish, wildlife, and recreational permits must list "the location and the character of the area to be used and the specific purposes for which such area will be used." A.R.S. § 45–152(B)(6). The ADWR director must approve proper applications for "the appropriation of water for a beneficial use" unless the proposed use "conflicts with vested rights, is a menace to public safety, or is against the interests and welfare of the public . . . ." A.R.S. § 42–153(A) (2003).

---

1. Because this case involves a stream, it is distinguishable from *Arizona Public Service Co. v. Long*, 160 Ariz. 429, 773 P.2d 988 (1989). There, the Arizona Supreme Court held that effluent was not subject to appropriation because it was

neither included in the groundwater definition nor in "the type of water subject to appropriation." *Id.* at 436, 773 P.2d at 995. In contrast, the water of Cherry Creek is clearly within the definition of appropriable waters.

¶ 12 The portion of the water use statute controlling applications for water use permits does not affirmatively require physical diversion to effect a beneficial use. Although an applicant may list a point of diversion and the time frame for completing works necessary to effectuate the proposed use under the statute, the logical reading of these requirements is that they must be provided only if relevant to the proposed use. Moreover, the subsection of the statute that requires applicants for wildlife, fish, and recreation permits to list the character of the area to be used does not mention a point of diversion. Had the Legislature intended to require a diversion for a successful application for such a water use permit, it could have done so in this subsection. Since the requirements for such a water rights application do not mandate a physical diversion, there is no statutory support for finding a diversion requirement, especially considering the statutory definition of beneficial use does not refer to such a requirement, A.R.S. § 45–151(A). *See State v. Morros,* 104 Nev. 709, 766 P.2d 263, 266 (1988) (refusing to find a diversion requirement in application criteria when no such requirement exists in the statutory definition of beneficial use).

¶ 13 Given the ambiguity of the statutory requirements with regards to instream flow rights and a diversion requirement, we look next to the historical context of the statute. *Kent K.,* 210 Ariz. at 283, ¶ 14, 110 P.3d at 1017. In response to water scarcity and preexisting cultural norms regarding water usage, Arizona has historically operated under a prior appropriation scheme of water use law. *See Clough v. Wing,* 2 Ariz. 371, 379–81, 17 P. 453, 455–56 (Terr.1888); Norman K. Johnson & Charles T. DuMars, *A Survey of the Evolution of Western Water Law in Response to Changing Economic and Public Interest Demands,* 29 Nat. Res. J. 347, 348–50 (1989). Our supreme court defined an appropriation as:

> the intent to take, accompanied by some open, physical demonstration of the intent, and for some valuable use . . . . When the

individual, by some open, physical demonstration, indicates an intent to take for a valuable and beneficial use, and, through such demonstration, ultimately succeeds in applying the water to the use designed, there is such an appropriation. While a diversion must of necessity take place before the water is actually applied to the irrigation of the soil, *the appropriation thereof is, in legal contemplation, made when the act evidencing the intent is performed.*

*Clough,* 2 Ariz. at 382–83, 17 P. at 457 (internal quotations omitted) (emphasis supplied). The right of the prior appropriator was limited to the scope of beneficial use. *Id.* at 378, 17 P. at 455. Because the right was usufructory [2] in nature, an appropriator was bound to make water exceeding his beneficial use available to junior appropriators. *Id.* at 377–78, 17 P. at 454–55; Johnson & DuMars, *supra,* at 351. As such, the focus in early water use law was upon the appropriator's intent to use. Diversion was acknowledged only as a practical necessity for irrigation and other off-site uses.

¶ 14 In 1893, the Territorial Legislature passed Act No. 86. *See* 1893 Ariz. Sess. Laws, ch. 86. That law provided two methods for appropriation: by posting and filing a notice of intent with the county recorder and then applying the water to the beneficial use contemplated, or simply by applying the water to a beneficial use. *Id.; Parker v. McIntyre,* 47 Ariz. 484, 489, 56 P.2d 1337, 1339 (1936). The only difference between the two methods was that, if notice was filed, the appropriation dated back to the filing of the notice. *Parker,* 47 Ariz. at 489, 56 P.2d at 1339. Applying this law, the Arizona Supreme Court found that bringing cattle to drink from nearby water sources constituted a valid appropriation of waters because it was a beneficial use, despite that no notice had been posted. *England v. Ally Ong Hing,* 105 Ariz. 65, 71, 459 P.2d 498, 504 (1969). Thus, the focus remained upon the use, and not necessarily the physical diversion of the water.[3]

---

2. Usufructory is derived from the noun, usufruct, which is "[t]he right to utilize and enjoy the profits and advantages of something belonging to another so long as the property is not damaged or altered." *Webster's II: New Riverside University Dictionary* 1272 (1994).

3. We reject Phelps Dodge's contention at oral argument that cattle watering is a diversion,

¶ 15 In 1919, the Arizona Legislature amended the above scheme and enacted the predecessors to the current water rights statutes. *See* 1919 Ariz. Sess. Laws, ch. 164. As noted above, neither instream water rights nor diversion are explicitly mentioned in Arizona's current statutory water scheme. The thrust of Phelps Dodge's argument in favor of interpreting a diversion requirement in the statutory water scheme is that the common law diversion requirement predates the development of the statutory scheme. Therefore, Phelps Dodge reasons, the diversion requirement was implicitly adopted into the statutory scheme, and may not be stricken absent a subsequent legislative act.

¶ 16 We reject that argument because, as noted above, there was no clear common law diversion requirement for all purposes. Diversion was recognized as a practical necessity under the traditional prior appropriation scheme when a beneficial use historically required the transportation of water to arid land for irrigation or similar off-site purposes. *See Arizona v. California,* 283 U.S. 423, 459, 51 S.Ct. 522, 75 L.Ed. 1154 (1931); *Clough,* 2 Ariz. at 382–83, 17 P. at 457; *McClellan v. Jantzen,* 26 Ariz.App. 223, 225, 547 P.2d 494, 496 (1976) (citing *Arizona v. California,* 283 U.S. at 459, 51 S.Ct. 522); Johnson & DuMars, *supra* at 350; Cynthia

Covell, *A Survey of State Instream Flow Programs in the Western United States,* 1 U. Denv. Water L.Rev. 177, 178–79 (1998).[4] However, Arizona common law and statutes preceding the current statutory scheme were unclear as to the existence of a substantive diversion requirement for establishing a valid appropriation for all purposes.[5] The court in *Clough* noted that, while a diversion was necessary for effecting a beneficial use in irrigation, a legal appropriation occurs when "*the act* evidencing intent is performed," 2 Ariz. at 382–83, 17 P. at 457 (emphasis added), thus indicating that there may be acts beside an actual diversion that would effect an appropriation other than for irrigation.[6] Moreover, the requirements for a valid appropriation listed in 1893 Ariz. Sess. Laws ch. 86 made no reference to a diversion, and the Arizona Supreme Court accordingly interpreted those requirements in *England* to allow cattle watering, an in situ use, as a prior appropriation. 105 Ariz. at 71, 459 P.2d at 504.

¶ 17 In interpreting the water use statute we further look to its effects and consequences. *Kent K.,* 210 Ariz. at 283, ¶ 14, 110 P.3d at 1017. Phelps Dodge argues that a physical diversion is required to provide notice of the appropriation to other par-

wherein the point of diversion is the cattle's mouth and the water is diverted to where the cattle roam. Creative though this characterization of the beneficial use may be, we cannot conclude that the *England* court saw Bessie the Cow as a diversion mechanism. Such interpretation is too attenuated from the plain meaning of diversion to interpret *England* as a case of appropriation through diversion.

In addition, we decline to adopt the New Mexico Supreme Court's holding in *State ex rel. Reynolds v. Miranda,* 83 N.M. 443, 493 P.2d 409 (1972). The court in that case relied on a common law definition of appropriation requiring intent to appropriate coupled with a man-made diversion to find that past livestock grazing in and around a wash was not a prior appropriation. *Id.* at 411. No such definition exists under Arizona law.

**4.** *See also* John Norton Pomeroy & Henry Campbell Black, *A Treatise on the Law of Water Rights* § 49, at 79 (St. Paul, West 1893) (hereinafter, "Pomeroy"). As Pomeroy explains, diversion was required to obtain an appropriation because "no exclusive *property* is or can be acquired in the water while still remaining or flowing it its natural condition, distinct and separate from the property in the land over which it runs...." *Id.*

However, neither of the cases cited by Pomeroy to support this contention actually state a diversion is required to effect an appropriation. *Riverside Water Co. v. Gage,* 89 Cal. 410, 26 P. 889 (1891); *Dalton v. Bowker,* 8 Nev. 190, 1873 WL 3405, at *7 (Nev. Jan. 1873).

**5.** We decline to adopt the Colorado Supreme Court's recognition of a diversion element for an appropriation under Colorado law. *Colorado River Water Conservation Dist. v. Rocky Mountain Power Co.,* 158 Colo. 331, 406 P.2d 798, 800 (1965). The court in that case relied on precedent establishing a common law diversion element. *Id.* at 799–800. There is no such clear precedent under Arizona law.

**6.** The thrust of *Clough* is that any water right is usufructory, to ensure a maximum beneficial use of Arizona's water resources. *Id.* at 377–78, 17 P. at 454–55. This principle has been incorporated into the present statutory scheme. *See* A.R.S. § 45–153(B). The allowance of an instream right for wildlife, fish, and recreation is more in harmony with this principle than requiring a diversion, since it would not require the removal of available water from the watercourse.

ties, and that without diversion, water rights are not subject to abandonment or forfeiture. However, there are alternative methods under Arizona law for providing notice and establishing abandonment and forfeiture.[7]

¶ 18 At common law, the courts recognized alternative means to provide notice in order to effect a valid appropriation. As noted in *Clough,* an appropriation occurred when there was an "open, physical demonstration" of intent to take for beneficial use. 2 Ariz. at 382, 17 P. at 457. This demonstration, which was not limited to a physical diversion, would serve to provide actual notice of the appropriation. *See* Pomeroy § 52, at 83 (an appropriator had to manifest intent to appropriate, although no particular method of manifestation or notice was required). The plaintiff in *England* established a valid appropriation in this manner merely by watering his cattle in nearby water sources for an extended period of time. 105 Ariz. at 71, 459 P.2d at 504.

¶ 19 Arizona's development of a constructive notice system further discredits the practical necessity of a diversion to show notice. By passing Act No. 86 in 1893, the Legislature supplemented the open, physical demonstration requirement with the possibility of filing a notice with the county recorder, thus introducing into water law the concept of constructive notice preceding actual use. *See Parker,* 47 Ariz. at 489, 56 P.2d at 1339. This system of providing constructive notice through a public filing procedure, as well as the derivative application system reflected in the current statute, negates any supposed necessity for a diversion to show notice. *See* Christine A. Klein, "The Constitutional Mythology of Western Water Law," 14 *Va. Envtl. L.J.* 343, 351 (Winter 1995); *In re Application A–16642,* 236 Neb. 671, 463 N.W.2d 591, 601 (1990) ("Since the permit system provides a surer method of providing lasting notice of the existence and quantity of valid appropriative rights, requiring a diversion as a prerequisite serves no useful purpose."). Furthermore, the current application system provides that the water usage is limited to the initial notice, unlike a diver-

sion, which by no means indicates or limits the scope of the appropriation. Recognition of diversion as serving a notice function therefore is not consistent with the spirit and purpose of the water statute, given the usufructory nature of water rights in Arizona and the aim of Arizona water law to maximize the beneficial use for all users, *see* supra n. 5.

▇▇▇ ¶ 20 Nor is diversion necessary to show abandonment and forfeiture. Abandonment and forfeiture are shown not through absence of diversion, but through cessation of beneficial use. "So long as utilization [of the legal water right] continues, the right remains secure." *In re General Adjudication of All Rights to Use Water in the Gila River System and Source,* 201 Ariz. 307, 310, ¶ 3, 35 P.3d 68, 71 (2001). A water right is deemed abandoned if the holder intends to abandon the right and a period of non-use occurs. *Gould v. Maricopa Canal Co.,* 8 Ariz. 429, 448, 76 P. 598, 601 (Terr.1904). Forfeiture occurs when the right is not used for a period of time and there is no intent to abandon. *Gila Water Co. v. Green,* 29 Ariz. 304, 306, 241 P. 307, 308 (1925). Under the current statute, forfeiture occurs when the water right has not been used for five successive years, unless the statute excuses the non-use. A.R.S. § 45–141(C). In addition, a water right may revert to the State if "a person entitled to the use of water has not beneficially used all or a portion of the water right for a period of five or more consecutive years." A.R.S. § 45–189(A). Failure to use a permitted instream flow right during the statutory period may result in a finding of abandonment or forfeiture as it would any other water right in Arizona. It may be shown through means other than lack of diversion, such as sustained absence of fish, wildlife, or recreational activity from the relevant water source. Therefore, recognizing instream flow rights does not preclude the application of abandonment or forfeiture principles.

¶ 21 Contrary to Phelps Dodge's argument, nothing in the statute, its history, or

---

7. We decline to address Phelps Dodge's hypothetical conflict between the holder of an instream water right and a town wishing to change the point of diversion for its senior water right. This is not the situation before us, and "[w]e will

not render advisory opinions anticipative of troubles which do not exist; may never exist; and the precise form of which, should they ever arise, we cannot predict." *Velasco v. Mallory,* 5 Ariz. App. 406, 410–11, 427 P.2d 540, 544–45 (1967).

its practical application affirmatively points to a diversion requirement. Existing case law interpreting the water use statute in fact militates against a diversion requirement in favor of recognizing instream water rights. In *McClellan v. Jantzen*, this Court interpreted the Legislature's inclusion of "wildlife, including fish" and "recreation" into the statutory list of beneficial uses as providing for in situ appropriation in the statutory water scheme. 26 Ariz.App. at 225, 547 P.2d at 496. The court found that, while diversion may have been necessary to effect a statutory beneficial use prior to the addition of wildlife and recreational use into accepted beneficial uses, it was not a necessity thereafter.[8] *Id.*

¶ 22 These findings are persuasive notwithstanding that the ultimate holding in *McClellan* did not directly address whether the statute provided for in situ water use permits. The sole issue in *McClellan* was "whether the stocking of a lake with fish by the Arizona Game & Fish Department is an appropriation of the waters of that lake requiring a permit from the State Land Department." *Id.* at 224, 547 P.2d at 495. The court ultimately held that merely stocking fish in the lake was not an appropriation requiring a permit. *Id.* at 226, 547 P.2d at 497. However, in so holding the court also stated, "[w]e therefore find that by these amendments the legislature intended to grant a vested right to the State of Arizona to subject unappropriated waters exclusively to the use of recreation and fishing." *Id.* This language indicates an express declaration that the court intended its finding not merely as an expostulation on water use law, but as a rule to guide the conduct of the State Land Department on remand. It is therefore judicial dictum, rather than obiter dictum,[9] and should be followed absent a cogent reason for departing from it. *State v. Fahringer*, 136 Ariz. 414, 415, 666 P.2d 514,

515 (App.1983). *Accord Resolution Trust Corp. v. Segel*, 173 Ariz. 42, 44, 839 P.2d 462, 464 (App.1992).

¶ 23 There is no sound reason to depart from the above interpretation in *McClellan.* The Legislature has not acted to forbid in situ or instream rights for wildlife and recreational water use since its publication. If the Arizona Legislature found the *McClellan* analysis erroneous, it could have passed or amended a statute to require physical diversion. In the twenty-nine years since *McClellan* was decided, the Legislature has not so acted. Accordingly, we presume it has approved *McClellan's* analysis. *See Blake v. Schwartz*, 202 Ariz. 120, 125, ¶ 26, 42 P.3d 6, 11 (App.2002) (when the Legislature retains statutory language that has been interpreted by the courts, it is presumed to have approved those interpretations).

¶ 24 Neither are the in situ rights addressed in *McClellan* distinct from the instream rights sought in this case. The issue is whether the law requires a physical diversion for the purposes requested here and in *McClellan.* Whether the case involves a lake or a stream has no bearing upon the analysis of this issue. Other courts have not recognized an analytical distinction between instream and in situ uses. *E.g., In re Adjudication of Existing Rights to Use of All the Water*, 311 Mont. 327, 344, ¶ 36, 55 P.3d 396, 406 (Mont.2002) ("Thus, instream/inlake appropriations of water for beneficial uses may be valid when the purpose (e.g., stock-watering, fish, wildlife and recreation) does not require a diversion.").

¶ 25 Finally, the ADWR has consistently interpreted Arizona water use law as allowing for instream flow rights since 1983. In cases in which the ADWR has consistently interpreted a statute related to water rights, we will afford that interpretation "great weight in the absence of clear statutory guidance to the contrary." *Arizona Water Co. v.*

---

8. The court in *McClellan* erroneously assumed that *all* water appropriation prior to the statutory amendments involved a diversion. 26 Ariz.App. at 225, 547 P.2d at 496. This assumption is erroneous given the in situ appropriation recognized in *England*, a case not cited in *McClellan.*

9. "Judicial dictum" is a statement the court expressly declares to be a guide for future conduct

and is therefore considered authoritative. *Segel* at 45, 839 P.2d at 465. "Obiter dictum," on the other hand, is "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." *Black's Law Dictionary* 490–91 (2d Pocket Ed.2001).

*Arizona Dep't of Water Res.,* 208 Ariz. 147, 154, ¶ 30, 91 P.3d 990, 997 (2004). "In cases like this, in which the statutory language is admittedly not dispositive, the director's expert interpretation deserves considerable deference by the judiciary, and should not be overturned simply because judges could find a greater 'sensibility quotient'...." *Id.* at 155, 91 P.3d at 998.

¶ 26 Phelps Dodge argues this Court should not defer to ADWR's interpretation because to do so would "reward it for years of usurping legislative authority." As noted above, the statute does not expressly allow for or condemn instream water rights, and historic accounts of the prior appropriation scheme in Arizona do not indicate diversion is a common law element of a valid appropriation for all purposes. Given that Arizona law does not prohibit, nor has it ever prohibited, the issuance of instream or in situ water rights, we defer to the ADWR's interpretation of A.R.S. § 45–152 allowing for issuance of instream flow rights, especially because it is consistent with the common law and the statutory scheme.

¶ 27 In conclusion, neither the historical context of Arizona water use law nor the language of the water rights statute compel a reading of the statute that would require a physical diversion in order to effect an appropriation in this context. Consistent with *England* and *McClellan,* as well as the ADWR's interpretation of its own statute, we hold that Arizona law allows the ADWR to issue instream and in situ water use permits.

## II. *ADWR's Use of the 1991 Instream Flow Guide.*

¶ 28 Phelps Dodge also argues that any authority of the ADWR to issue a permit is negated by its reliance upon an invalid rule. According to Phelps Dodge, the ADWR violated the APA, A.R.S. §§ 41–1021 to –1035, by applying the 1991 Instream Flow Guide without codifying it as a regulation.

¶ 29 The superior court rejected this argument in part because it found that the ADWR had not relied upon the 1991 Instream Flow Guide as a rule and has not applied it against Phelps Dodge. On appeal, Phelps Dodge fails to address this ruling. Accordingly, we decline to reach the merits of this issue.[10] *DeElena v. Southern Pac. Co.,* 121 Ariz. 563, 572, 592 P.2d 759, 768 (1979).

### CONCLUSION

¶ 30 There is not a physical diversion requirement for valid appropriation of instream or in situ water rights under A.R.S. § 45–152. The Arizona Department of Water Resources therefore has the authority under Arizona law to issue permits for such water rights. We affirm the judgment of the superior court.

LAWRENCE F. WINTHROP and PHILIP HALL, JJ., concur.

---

10. Even if we were to address the merits, we would hold that ADWR did not violate the Act. As the ADWR points out, it adopted the 1991 Instream Flow Guide as a substantive policy statement in accordance with A.R.S. § 41–1091. That statute permits an agency to adopt a written expression that "informs the general public of an agency's current approach to, or opinion of, the requirements of ... state statute...." The 1991 Instream Flow Guide describes the process for obtaining water rights to enable applicants to comply and to provide the ADWR with guidance on whether to approve certain applications. It does not set any new requirements or require that a specific methodology be used, but encourages applicants to make their own judgments.